Thomas W. HALEY, Ann S. Haley, Plaintiffs-Appellees,

v.

PAN AMERICAN WORLD AIRWAYS, INC., et al., Defendants-Appellants.

No. 84-3217
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 16, 1984.
Rehearing and Rehearing En Banc Denied Dec. 20, 1984.

---

**26.** 380 U.S. at 472, 85 S.Ct. at 1144, 14 L.Ed.2d at 17.

Deutsch, Kerrigan & Stiles, Francis G. Weller, Marc J. Yellin, John P. Volz, U.S. Atty., New Orleans, La., for defendants-appellants.

Michael X. St. Martin, Houma, La., Jobe & Gurley, Tony Bryson Jobe, New Orleans, La., for plaintiffs-appellees.

Before REAVLEY, POLITZ and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

On July 9, 1982, Michael H. Haley, the son of appellees here, was aboard Pan American World Airways Flight 759 when it crashed in Kenner, Louisiana. Haley, along with all 138 passengers and seven crew members, was killed when the Boeing 727 disintegrated upon impact with the ground. After a damages trial,[1] the jury returned a verdict in favor of Michael's parents, Thomas W. Haley and Ann S. Haley, and against Pan American World Airways, Inc. and the United States of America, awarding the Haleys $15,000 for the mental anguish suffered by Michael "prior

to the first impact between the plane and the ground," and $350,000 to each parent for the loss of the decedent's love and companionship.[2] The trial court denied defendants' motions for judgment notwithstanding the verdict and for new trial.

Pan Am contends that Louisiana does not allow recovery for pre-impact pain and suffering and that the trial judge abused his discretion in admitting evidence on this issue. The evidence that was introduced, it argues, was insufficient to support the jury's finding that the decedent suffered any such pre-impact fear. Pan Am also challenges as excessive the damages awarded for both pre-impact fear and for loss of love and companionship. We find that Louisiana law permits recovery for a decedent's pre-impact fear and that there was sufficient evidence to support the jury's $15,000 award for this element of damages. We remand, however, with instructions to grant a new trial on the amount of wrongful death damages unless the plaintiffs accept a remittitur to the maximum we consider allowable on the record.

I

We follow the Louisiana law of damages in this diversity suit. Despite the parties' urging, we find no Louisiana court which has squarely confronted the issue of whether the fear a decedent experiences prior to both death *and* physical impact is a legally compensable element of damages. It appears to be undisputed that the Pan Am 727 disintegrated, and Michael died immediately upon impact with the ground.

A broad compensatory principle lies behind Article 2315 of the Louisiana Civil Code.[3] Louisiana, therefore, has long rec-

---

1. This suit, along with a number of other cases resulting from the same air disaster, was initially transferred by the Judicial Panel on Multidistrict Litigation to the Eastern District of Louisiana for coordinated and consolidated pre-trial proceedings pursuant to 28 U.S.C. § 1407. By stipulation, liability was not contested. A jury trial in the Haleys' case was held on January 24, 1984 and judgment therein entered on January 30, 1984.

2. This diversity action was governed by Louisiana law. The Haleys' action was brought pursuant to Article 2315 of the Louisiana Civil Code, which provides both for the survival of actions and for recovery for wrongful death. *Guidry v. Theriot*, 377 So.2d 319 (La.1979).

3. Article 2315 states in part: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La.Civ.Code Ann. art. 2315 (West Supp.1984).

ognized that negligence, which causes fright and serious personal injury, is actionable, *Stewart v. Arkansas Southern Railway Co.,* 112 La. 764, 36 So. 676, 677 (La.1904), and that "fright, fear, or mental anguish while an ordeal is in progress is legally compensable." *Dawson v. James H. Stuart & Deaton, Inc.,* 437 So.2d 974, 976 (La.Ct.App.1983); *Carroll v. State Farm Insurance Co.,* 427 So.2d 24, 25–26 (La.Ct.App.1983); *Butler v. Pardue,* 415 So.2d 249, 252 (La.Ct.App.1982); *Kyle v. City of New Orleans,* 357 So.2d 1389, 1391 (La.Ct.App.), *writ ref'd,* 359 So.2d 1307 (La. 1978); *Singleton v. Townsend,* 339 So.2d 543, 544 (La.Ct.App.1976); *Hoffman v. All Star Insurance Corp.,* 288 So.2d 388, 389 (La.Ct.App.1974), *writ ref'd,* 290 So.2d 909 (La.1974); *Rezza v. Cziffer,* 186 So.2d 174, 179 (La.Ct.App.1966).[4] As Pan Am correctly points out, many of these cases deal with recovery for post-impact mental anguish associated with physical injury. Indeed, article 2315 most commonly compensates for pain and suffering endured by a decedent *after* injury but before death. *See Guidry, supra,* 377 So.2d at 322. Louisiana jurisprudence, however, indicates that fright or mental anguish is a separate element of compensable damages, apart from oft-accompanying physical injury.[5] In *Dawson, supra,* for example, the jury compensated the injured plaintiff for the "extreme terror that he would lose his life," experienced "during the ordeal," as well as for the physical symptoms flowing therefrom, experienced afterward. 437 So.2d at 976. Louisiana would, in fact, appear to permit recovery for negligently-induced fright, even in the absence of actual physi-

cal injury.[6] *Carroll, supra,* 427 So.2d at 25–26; *Butler, supra,* 415 So.2d at 252.

■ While Louisiana courts then, have never expressly allowed recovery for pre-impact apprehension in anticipation of imminent death, they do allow recovery for fear during a negligently produced ordeal. We are not prepared to conclude that the Louisiana courts would sever such an "ordeal" into before and after impact components.

This mirrors our reasoning in *Solomon v. Warren,* 540 F.2d 777 (5th Cir.1976), *cert. denied,* 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977). In *Solomon,* plaintiffs' parents died when, after radioing for aid, their small aircraft crashed into the sea. While there was admittedly no evidence as to the length of time the couple suffered before death or whether they died immediately upon impact, the district court was "'convinced that both of the deceased knew of the impending crash landing at sea, knew of the imminent dangers involved, and are certain to have experienced the most excruciating type of pain and suffering (the knowledge that one is about to die, leaving three cherished children alone).'" *Id.* at 792. In upholding the district court's conclusion that Florida would permit recovery for the decedent's conscious pain and suffering prior to death, we stated:

> While in the garden variety of claims under survival statutes, including the Florida Statute—fatal injuries sustained in automobile accidents and the like—the usual sequence is impact followed by pain and suffering, we are unable to discern any reason based on either law or

---

**4.** The district court's dicta in *Reed v. John Deere,* 569 F.Supp. 371, 378 (M.D.La.1983) that "the terror that [the decedent] no doubt experienced when he realized the machine was going to run over his body …" was not compensable, is perplexing in light of this long line of precedent. Pan Am's reliance on *Reed* as an accurate statement of current Louisiana law is therefore misplaced.

**5.** *See Dawson,* 437 So.2d at 976 (plaintiff compensated for his fear during ordeal); *Kyle,* 357 So.2d at 1391 and 1391 n. 3 (element of dam-

ages is fear plaintiff experienced at time of accident); *Singleton,* 339 So.2d at 544 (suit brought in tort for "fear of life").

**6.** *See Stewart,* 36 So. at 677, where the Louisiana Supreme Court expressly rejected the "simple rule that no recovery of any kind can be had for fright occasioned by the negligence of another…" and indicated that Louisiana already considered mental distress in itself sufficient to decree damages. *Id., citing Lewis v. Holmes,* 109 La. 1030, 34 So. 66 (1903).

logic for rejecting a claim because in this case as to at least part of the suffering, this sequence was reversed. We will not disallow the claims for this item of damages on that ground.

*Id.* at 793 (citations omitted).[7]

█ It would appear then, that Louisiana would recognize a cause of action for pre-impact fear experienced by a decedent in apprehension of impending death.[8] The district court was therefore correct, both in denying Pan Am's motion for judgment notwithstanding the verdict based on the ground the Haleys had failed to state a claim under Louisiana law, and in admitting evidence of pre-impact fear to aid the jury in assessing damages. The cases cited by Pan Am in support of its contention go instead to its stronger sufficiency argument.

█ Louisiana courts condition a "survival" claimant's recovery on proof of predeath pain and suffering. *Daniels v. Conn*, 382 So.2d 945 (La.1980). This generally requires affirmative evidence that a decedent was "conscious" after the accident, and did in fact, suffer pain. *See, e.g., Bialy v. State*, 414 So.2d 1273 (La.Ct.App. 1982), *writ denied*, 417 So.2d 367 (La.1983);

*Chausse v. Southland Corp.*, 400 So.2d 1199 (La.Ct.App.1981), writ denied, 404 So.2d 278 (La.1981); *Blanchard v. Rodrigue*, 340 So.2d 1001 (La.Ct.App.1976); *Addison v. Travelers Insurance Co.*, 281 So.2d 805 (La.Ct.App.1973); *McDaniel v. Welch*, 234 So.2d 833 (La.Ct.App.1970).[9]

█ Pan Am argues that the record evidence is insufficient to support the finding that Michael Haley suffered any "conscious" pre-impact fear, as no passenger survived to relate what Michael may have experienced; nor were there any eyewitnesses to testify as to the path or trajectory of the plane prior to its crash. The only evidence offered on this issue was a videotape simulation of the takeoff and crash of Flight 759; a stipulation explaining the known facts culled from investigation; and the videotaped testimony of both parties' experts. The parties stipulated that the Pan Am plane took off and rose to an altitude of 163 feet before beginning its fatal descent. While the plane rolled to its left, testimony indicated there was no change in gravitational forces. The plane's wing struck a tree fifty-three feet above ground, and the aircraft rolled, impacted

7. Judge Gee wrote a vigorous dissent, contending that in light of Florida's explicit impact prerequisite to recovery for negligently inflicted mental anguish, "any compensable mental pain and· suffering must be caused by the physical impact." *Id.* at 796–97 (Gee, J. dissenting). As the decedent's anxiety was caused by the "anticipation of death," rather than the actual crash, Judge Gee viewed the majority's decision as creating a new element of damages based on "sheer speculation." *Id.* at 797. For a discussion of the "proof" difficulties inherent in measuring such apprehension damages, *see infra*.

The "impact rule" rationale behind Judge Gee's dissent in *Solomon*, however, is here absent. As discussed, *supra*, Louisiana explicitly permits separate recovery for fright suffered during an ordeal. "Impact" is not essential to such recovery, despite obvious "speculative" problems.

8. At least two other circuits have allowed recovery for a decedent's pre-impact fear in similar airline disasters. *See Shu-Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 53 (2d Cir.1984) (New York law permits recovery for a decedent's pre-impact fear as there is "no intrinsic or logical barrier to recovery for the fear experienced during a period in which the decedent is

uninjured but aware of impending death." *Id.*); *United States v. Furumizo*, 381 F.2d 965 (9th Cir.1967) (affirming district court's award, under Hawaiian law, for the "decedent's pain and suffering during the descent of the Piper plane, its crash to the ground, and the burning of decedent to death," *Furumizo v. United States*, 245 F.Supp. 981, 1015 (D.Hawaii 1965)). *But see In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 507 F.Supp. 21, 23–34 (N.D.Ill. 1980) (no recovery for passenger's alleged fright and terror prior to crash in absence of physical injury causing such distress).

9. This requirement has been relaxed somewhat in recent cases allowing recovery for pain and suffering if there exists some evidence that the decedent was "sensitive to and aware of pain." *Temple v. Liberty Mutual Insurance Co.*, 330 So.2d 891, 893 (La.), *on remand*, 336 So.2d 299 (La.Ct.App.1976); *Walker v. St. Paul Insurance Companies*, 339 So.2d 441 (La.Ct.App.), *remanded on other grounds*, 341 So.2d 554 (La.1976), *on remand*, 343 So.2d 251 (La.Ct.App.1977); *see also Miller v. National Fire and Marine Insurance Co.*, 578 F.2d 125 (5th Cir.1978).

and disintegrated some four to six seconds later. Plaintiffs' expert, a psychiatrist who had treated survivors of aircraft accidents and was familiar with the physiological effects of stress, explained the five levels of anxiety that culminate in panic.[10] He then rendered his opinion that "most of the people [aboard Flight 759], if not all, would be in an absolute state of pandemonium, panic and extreme state of stress," at least from the time the plane hit the tree, if not from the beginning of its descent and roll, until impact seconds later. Defendant's expert expressed uncertainty as to whether "any of the passengers, in fact realized that they were about to die." He conceded, however, that when the passengers experienced a "violent change in the plane, the last couple of seconds," they "certainly would have been thrown about and *fighting for their lives* and experienced a whole different situation." (emphasis added).

A number of courts have disallowed recovery in similar situations for lack of evidence the decedent was aware of the danger or in fact suffered any pre-impact terror. In *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202 (2d Cir.1984), for example, the Second Circuit reversed a jury award for pre-impact pain and suffering, finding no evidence the decedent-passenger was awake, let alone aware that anything was wrong. *Id.* at 207. The rolling of the plane, the only possible indicia of danger to this particular passenger, was as compatible with normal airline traffic patterns as with imminent disaster. *Id.* at 206–07. In *Shu-Tao Lin v. McDonnell Douglas Corp.*, *supra*, a case arising out of the same air disaster as *Shatkin*, however, the Second Circuit held that the jury had sufficient evidence before it to infer that a passenger sitting on the side of the plane opposite Shatkin, could have seen the left engine break away and experienced pre-impact fear during the thirty seconds between takeoff and crash. *Id.* at 54.[11]

A damages award cannot stand when the only evidence to support it is speculative or purely conjectural. *In re Dearborn Marine Service, Inc.*, 499 F.2d 263, 288 (5th Cir.1974).[12] Nor will we affirm an award for pre-death mental anguish when there is no evidence of its existence. *See, e.g., Calderera v. Eastern Air Lines*, 529 F.Supp. 634, 640 (W.D.La. 1982), *remanded on other grounds*, 705

---

**10.** Pan Am challenges the trial court's admission of Dr. Scrignar's testimony, allegedly irrelevant, misleading and prejudicial, as an abuse of discretion and an invasion of the jury's province. We cannot say, however, that the expert's testimony, regarding the physiological effects associated with awareness of immediate danger, was either irrelevant or within the ken of the layman-juror. Admission of this testimony, then, did not rise to the requisite level of abuse. *Garwood v. International Paper Co.*, 666 F.2d 217, 223 (5th Cir.1982). The appellant's appeal to Fed.R.Evid. 403 is likewise unavailing in light of the broad discretion accorded the trial judge in such matters.

**11.** *Feldman v. Allegheny Airlines, Inc.*, 382 F.Supp. 1271 (D.Conn.1974), *aff'd in part*, 524 F.2d 384 (2d Cir.1975), cited by Pan Am, can similarly be distinguished. Despite evidence that all the passengers died from asphyxiation rather than impact, and that over one-half of them were found clustered near the plane's door, the court found an award for decedent's contemplation of death "too speculative" in light of the absence of any dramatic change in the plane's altitude "indicative of disaster." *Id.* at 1300–01.

The courts in *O'Rourke v. Eastern Airlines, Inc.*, 730 F.2d 842 (2d Cir.1984) and *Domangue v. Eastern Air Lines, Inc.*, 531 F.Supp. 334, 341 (E.D.La.1981) did not address the sufficiency of evidence to support a pre-impact award. They instead dealt only with the trial court's discretionary ruling, under Federal Rules of Evidence 401 and 402, that testimony of surviving passengers who never saw the decedent, was irrelevant to what the decedent himself experienced prior to the crash. *See Shu-Tao Lin v. McDonnell Douglas Corp.*, 574 F.Supp. 1407, 1417 (S.D.N.Y. 1983) *aff'd* 742 F.2d 45 (2d Cir.1984) (distinguishing *O'Rourke* in this manner).

**12.** In *Dearborn, supra*, we found evidence that the decedent was within the interior of the vessel approximately fifteen minutes before its explosion insufficient to support an award for pre-death pain and suffering under the Texas survival statute. The "immediacy of the occurrence and the absence of other evidence ma[d]e too speculative" the finding that the decedent survived the explosion. 499 F.2d at 288. *See also In re Sincere Navigation Corp.*, 329 F.Supp. 652, 659 (E.D.La.1971) *aff'd in part on other grounds sub nom., Matter of SS Helena*, 529 F.2d 744 (5th Cir.1976).

F.2d 778 (5th Cir.1983). In reviewing Pan Am's challenge to the sufficiency of the evidence, however, we are bound to consider the evidence and all reasonable inferences therefrom in the light most favorable to the jury verdict. *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969). No one indeed will ever "know" whether Michael Haley was aware of his impending death, or whether he experienced the uncontrollable "panic" of which Dr. Scrignar testified. Eyewitness testimony, however, is not necessary to support an award for conscious pain and suffering. *Deal v. A.P. Bell Fish Co.*, 728 F.2d 717, 718 (5th Cir. 1984) (per curiam).

■ The evidence at trial was silent as to the exact length of time Michael was aware of his impending death. Perhaps he did not have knowledge that something was wrong at the time the plane began its descent and roll. The inference is more than "reasonable," however, that Michael apprehended his death at least from the time the plane's wing hit the tree. Pan Am's own expert acknowledged that all aboard the plane were "fighting for their lives" at this point. One need not "speculate" that the decedent was aware, for at least four to six seconds, of the impending disaster. The jury could have reasonably inferred therefrom that Michael Haley experienced the mental anguish commonly associated with anticipation of one's own death.[13] We therefore conclude that there was sufficient evidence to support its finding.

## II

■ The jury awarded the Haleys $15,000 for the mental anguish suffered by Michael before the plane's impact, and $350,000 each for the loss they themselves suffered as a result of Michael's wrongful death. Pan Am argues that these damages are excessive, and that the district court erred in refusing to grant a new trial or a remittitur. Of course, a jury's assessment of damages is entitled to great deference by a reviewing court and should be disturbed only in those "rare" instances where it "clearly exceeds that amount that any reasonable man could feel the claimant is entitled," *Bridges v. Groendyke Transport, Inc.*, 553 F.2d 877, 880 (5th Cir.1977). Unless an award is "so gross or inordinately large as to be contrary to right of reason," *Complete Auto Transit, Inc. v. Floyd*, 249 F.2d 396, 399 (5th Cir.), *cert. denied*, 356 U.S. 949, 78 S.Ct. 913, 2 L.Ed.2d 843 (1958) or so excessive as to suggest "bias, passion, prejudice, corruption, or other improper motive," *Allen v. Seacoast Products, Inc.*, 623 F.2d 355, 364 (5th Cir.1980) it must be allowed to stand. The fact the trial judge reviewed and approved the verdict in this case makes us even more hesitant to overturn the awarded amount. *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 934 (5th Cir.1982); *Bridges, supra*, 553 F.2d at 880; *Brown v. Louisiana and Arkansas Railway Co.*, 429 F.2d 1265, 1267 (5th Cir.1970).

## A.

■ Pan Am contends that even if sufficient evidence supports the jury's finding that the decedent suffered pre-impact fear, an award of $15,000 for no more than four to six seconds of such anguish is clearly contrary to reason. In *Solomon v. Warren, supra*, however, there was no evidence as to the length of time the couple suffered prior to their death in an airplane crash. Despite the fact that the decedents' pain and suffering may have only been brief, a panel of this court nevertheless affirmed a $10,000 award to each decedent's estate, noting that such recovery was "if anything, on the very low side." 540 F.2d at 793. In *Shu-Tao Lin, supra*, the Second Circuit affirmed a $10,000 award for a possible thirty seconds of pre-impact fear. 742 F.2d 45 at 53. The Ninth

---

**13.** In *Solomon v. Warren, supra*, this court found sufficient evidence to support the jury finding that the decedents suffered pre-impact fright. Though there was no evidence as to how long the decedents were aware of their "impend-ing deaths," we concluded that "nevertheless the inference is reasonable, almost compelling, that they appreciated that possibility from the time of the radio transmission from Warren [the pilot] to Barbados Tower." 540 F.2d at 792.

Circuit in *Furumizo, supra,* affirmed as non-"shocking" a $15,000 award for the decedent's "brief" pain and suffering during the descent and fiery crash of his aircraft. 381 F.2d at 970. In light of these holdings, we cannot say the jury's $15,000 award for Michael Haley's mental anguish in the period prior to the plane's impact, however brief it may have been, was either "shocking" or contrary to "right of reason." We affirm this portion of the award.

### B.

 Ann and Thomas Haley were awarded $350,000 each for the loss of Michael's love and companionship.[14] Pan Am contends that such an award, for each parent of a twenty-five year old man who lived away from home for the last eight years of his life, is clearly excessive and induced by improper motives and sympathy. It points out that such recovery is by far the highest quantum of damages awarded the parents of an adult offspring in Louisiana jurisprudence. We recognize, as does the Louisiana Supreme Court, that an examination of such prior awards is of limited use in assessing the particular damages suffered by these particular claimants under these particular circumstances. *Reck v. Stevens,* 373 So.2d 498, 500–01 (La.1979). However, as the Louisiana Court also appreciates, prior awards may be of some aid in determining excessiveness when "the present award is shown to be greatly disproportionate to past awards ... for ... 'similar' injuries." *Id.* at 501. The $350,000 awarded to both parents here, indeed appears disproportionate to past Louisiana awards for similar injuries. In the very recent case of *Lang v. Prince,* 447 So.2d 1112, 1118 (La.Ct.App.1984), *writ denied,* 450

So.2d 1309 (La.1984) a Louisiana appellate court affirmed a $150,000 judgment to the mother of an eighteen year old decedent in the "extraordinary circumstances" where the mother suffered "extreme mental and physical illness" as a result of her son's death.[15] This appears to be the highest wrongful death recovery yet awarded a parent in Louisiana.[16]

This court recently had occasion to review the size of a similar wrongful death award to a man who lost his wife, mother, and eight year old son in the crash of a commercial airliner. *Caldarera v. Eastern Airlines,* 705 F.2d 778 (5th Cir.1983). The district court had awarded Caldarera $150,000 for the loss of his son, *Caldarera v. Eastern Airlines, Inc.,* 529 F.Supp. 634, 639 (W.D.La.1982). Judge Rubin, in writing for the panel, stated:

> The loss of a loved one is not measurable in money. Human life is, indeed, priceless. Yet the very purpose of the lawsuit for wrongful death is to fix damages in money for what cannot be measured in money's worth. Unless we are to accept any verdict, in whatever amount, as a legally acceptable measure, we must review the amount a jury or a trial court awards. Reassessment cannot be supported entirely by rational analysis. It is inherently subjective in large part, involving the interplay of experience and emotions as well as calculation. The sky is simply not the limit for jury verdicts, even those that have been once reviewed.

*Id.* at 784. The court's $150,000 assessment of the father's loss, though "generous," was not excessive. *Id.* at 785. Even considering the heightened trauma Caldarera experienced by virtue of his multiple losses, however, and adding as much as

---

**14.** Under Louisiana law, parents are entitled to recover damages for the loss of love, affection and companionship, as well as for grief endured, as a result of the wrongful death of a child. *See, e.g. Ogaard v. Wiley,* 325 So.2d 642, 650–51 (La.Ct.App.1975).

**15.** The court stated that the mother's damages were "unique to this court's experience." *Id.* at 1118.

**16.** *See also Williams v. City of New Orleans,* 433 So.2d 1129 (La.Ct.App.1983) ($150,000 recovery where "there existed a very close relationship" between mother and twenty year old son); *Johnson v. Folse,* 438 So.2d 1137 (La.Ct.App. 1983) ($145,000 to widowed mother of twenty year old live-in daughter); *Bullard v. State,* 413 So.2d 606 (La.Ct.App.1982) ($150,000 award to each parent of twenty-seven year old decedent reduced to $100,000).

fifty percent to his award, the maximum verdict for the loss of the son that the district court could have let stand without remittitur was held to be $225,000.[17]

In view of this opinion and the fact that $150,000 appears to be a relatively large, if not the largest, damage award for loss of an adult child in Louisiana, the maximum that we think a reasonable jury could have awarded each parent was $200,000 ($150,000 plus an additional one third). As the $350,000 awarded each parent here is in excess of this maximum amount, we reverse the trial court's denial of Pan Am's motion for new trial, and order a new trial on the issue of wrongful death damages unless Thomas and Ann Haley each agree to a remittitur of their respective awards against Pan Am to the amount of $200,000. The $15,000 verdict for the decedent's pre-impact anguish shall stand.

AFFIRMED in part and REMANDED.

---

**17.** Judge Rubin was adhering to this circuit's "maximum recovery rule," *Carlton v. H.C. Price Co.,* 640 F.2d 573, 582 n. 14 (5th Cir.1981); *Stapleton v. Kawasaki Heavy Industries, Ltd.,* 608 F.2d 571, 574 n. 7 (5th Cir.1979), *modified on another ground,* 612 F.2d 905 (5th Cir.1980).