789 F.2d 1092
 In re AIR CRASH DISASTER NEAR NEW ORLEANS, LOUISIANA ON JULY
9, 1982.
Louis Alberto TRIVELLONI-LORENZI, and Susana Electra
Trivelloni-Lorenzi, Plaintiffs-Appellees,
v.
PAN AMERICAN WORLD AIRWAYS, INC., et al., Defendants-Appellants.
Ernesto Serio PAMPIN LOPEZ, Individually and As
Administrator of the Estate of His Deceased Mother
Sara E. Lopez De Pampin, Plaintiff-Appellee,
v.
PAN AMERICAN WORLD AIRWAYS, INC. and United States of
America, Defendants- Appellants.
 Nos. 84-3832, 84-3833.
 United States Court of Appeals,
Fifth Circuit.
 May 7, 1986.
Rehearing Granted July 8, 1986.
 
 Deutsch, Kerrigan & Stiles, Francis G. Weller, Frederick R. Bott, Darrell K. Cherry, Robert E. Kerrigan, Jr., New Orleans, La., for defendants-appellants.
 Patricia R. Murray, Stephen B. Murray, Romualdo Gonzalez, New Orleans, La., for plaintiffs-appellees.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before: GARZA, POLITZ and HILL, Circuit Judges.
 OPINION
 POLITZ, Circuit Judge:
 
 
 1
 This chapter in the continuing judicial terminus of the claims arising out of the crash of Pan American World Airways Flight 759 on takeoff from Moisant International Airport on July 9, 1982, presents several issues: (1) application of the rubric of forum non conveniens; (2) Warsaw Convention limitation of liability; and (3) as to the damage awards, questions of excessiveness, discounting, prejudgment interest, and allowance of preimpact and postimpact recovery. We affirm in part, reverse in part, and remand.
 
 BACKGROUND
 
 2
 The plaintiffs in these consolidated cases are citizens and residents of Uruguay, and are heirs of passengers killed in that disastrous flight. Luis Alberto and Susana Electra Trivelloni-Lorenzi are the children of Luis Alberto and Electra Iris Trivelloni who were victims of the crash. Ernesto Serio Pampin-Lopez seeks damages for the deaths of his mother Sara Lopez de Pampin, his sister Maria Amparo Pampin-Lopez, and his aunt Irma Lopez de Alvarez. The decedents were on a vacation trip to the United States and were en route to Las Vegas prior to returning home.
 
 
 3
 In August 1982 suit was filed against Pan Am and other defendants.[1] In April 1983 administrative claims under the Federal Tort Claims Act were commenced against the United States, which was, in due course, added as a defendant. Prior to the rejection of the administrative claim under the FTCA which allowed the joining of the United States as a defendant, Pan Am made known its intention to move for a dismissal on the grounds of forum non conveniens.
 
 
 4
 In connection with the motion, Pan Am made known its willingness to: (1) submit to the jurisdiction of the courts of Uruguay, (2) concede liability, (3) waive any statute of limitations defense, (4) waive the Warsaw Convention limitation of damages, and (5) guarantee satisfaction of any judgment entered against it in Uruguay. In response to Pan Am's declaration of intent, the district court, in an effort to expedite matters, made known its proposed ruling. Anticipating the government as a defendant the court advised counsel: "You have no right to that transfer.... We're going to trial here on damages, with the government as a defendant and with the crash happening here." Pan Am subsequently submitted its motion, which was denied. Thereafter, immediately upon completion of the administrative process, the United States was made a party-defendant in both suits.
 
 
 5
 Pan Am then sought the application of Uruguayan law to the claims, apparently submitting with its motion two memoranda, neither of which is before us. Finding that Pan Am had failed to show any significant difference between the law of Uruguay and that of Louisiana, the district court denied the motion. Notwithstanding the prior adverse choice-of-law ruling, Pan Am then moved to dismiss the claims for preimpact and postimpact pain and suffering on the grounds that such damages were not recoverable under Uruguayan law. Referring to its prior order, the court denied these motions.
 
 
 6
 On the eve of trial Pampin sought the application of Uruguayan law insofar as it recognized a nephew's claim for the wrongful death of an aunt, a claim not recognized under Louisiana law. In orally granting the motion the court stated:
 
 
 7
 The reason that we continue to [apply] Louisiana law is because the law of Louisiana in conflicts ... is that Louisiana will apply its own law unless the domiciliary state has some interest in applying its own law. The domiciliary state in none of these cases, save one, has ever had any interest that [Pan Am] could demonstrate that the domiciliary state would have an interest in applying its law. Now [the case of Alvarez] would be one.... Nobody has ever demonstrated that Uruguay would say, wait, Louisiana, we want you to hurt our citizen by applying the Uruguayan law and help Pan Am or the United States Government.
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 You've got a dead person [Alvarez]. Louisiana law says under [La.Civ.Code Art.] 2315 nobody can recover ... for [Alvarez's] death. There's no 2315 survivor. Uruguay says, for this deceased person [Alvarez], here's who recovers [i.e., Pampin]. Louisiana says, oh, Uruguay, you're the domicile nation. Do you have an interest ... in applying your own law? To which [Uruguay] says, bet your fanny we do. We have a law that says [nephews] recover.
 
 
 11
 Louisiana says, fine, we'll apply that. Now, we have another dead person ..., another Pampin.... Louisiana's 2315 says child, mother, whoever recovers. Louisiana turns to Uruguay and says, do you have an interest in saying somebody else recovers besides these? And Uruguay says, no, we have no interest in that. So Louisiana says, fine, we'll apply our law then. That is the law of Louisiana.
 
 
 12
 The trial court also granted plaintiff's in limine motion to strike Pan Am's defense which sought to invoke the damage limitation for the death of international passengers imposed by the Warsaw Convention as modified by the Montreal Agreement. The Montreal Agreement requires that the notice of limited liability be furnished to the passengers in writing in ten-point type. The notice on the tickets of the five decedents was printed in nine-point type. Because of this failure of compliance with the Montreal Agreement, the district court declined to impose the $75,000 death-claim limit.
 
 
 13
 Upon completion of all pretrial matters the cases proceeded to trial and a jury was selected for each. The trials began physically consolidated, both juries simultaneously heard the testimony of two witnesses to the crash, Opal Bode and Evelyn Pourciau, and that of an anthropologist from Tulane University, who testified about South American mores and familial relations. The trials were then separated for the presentation of other evidence and further proceedings.
 
 
 14
 The Trivelloni jury awarded $25,000 each for the preimpact pain and suffering of Luis and Electra Trivelloni, $75,000 to each plaintiff for the death of both parents, and $3530 for loss of their parents' personal effects, a total of $203,530 for the two Trivelloni plaintiffs.
 
 
 15
 The Pampin jury awarded Ernesto Pampin $25,000 for the preimpact pain and suffering of each of the three victims, $12,000 for the postimpact pain and suffering of Irma Lopez de Alvarez, $250,000 for the death of his mother, $150,000 for the death of his sister, $13,000 for the death of his aunt, and $16,853.89 for loss of their personal possessions, for a total of $516,853.89.
 
 
 16
 The district court denied all posttrial motions and this appeal was timely noted.
 
 ANALYSIS
 
 17
 1. Forum non conveniens and choice of law.
 
 
 18
 Pan Am maintains that the district court erred by failing to dismiss the suits on the grounds of forum non conveniens, by applying Louisiana law in resolution of the claims, and by applying Uruguayan law in recognizing Pampin's claim for the death of his aunt. Pan Am contends that since the district court did not give comprehensive consideration to the factors enunciated in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947),[2] as refined in Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), we should do so. Pan Am suggests that a proper application of these factors would result in a dismissal of these actions.[3]
 
 
 19
 It is too well-settled to permit of argument that the first determination which must be made in deciding the forum non conveniens conundrum respects the choice-of-law. Which country's law is to be applied? The court must first determine whether American or foreign law governs the lawsuit. McClelland Engineers, Inc. v. Munusamy, 784 F.2d 1313 (5th Cir.1986); Cuevas v. Reading & Bates Corp., 770 F.2d 1371 (5th Cir.1985); In re McClelland Engineers, Inc., 742 F.2d 837 (5th Cir.1984), cert. denied sub nom. Munusamy v. McClelland Engineers, Inc., --- U.S. ----, 105 S.Ct. 1228, 84 L.Ed.2d 366 (1985); Koke v. Phillips Petroleum Co., 730 F.2d 211 (5th Cir.1984). If American law, either federal or state, applies to the action, the federal court should retain jurisdiction; if foreign law applies, dismissal may be appropriate if there exists a more convenient forum. Cuevas; Koke; DeOliveira v. Delta Marine Drilling Co., 707 F.2d 843 (5th Cir.1983); Fisher v. Agios Nicolaos V, 628 F.2d 308 (5th Cir.1980), cert. denied sub nom. Valmas Bros. Shipping, S.A. v. Fisher, 454 U.S. 816, 102 S.Ct. 92, 70 L.Ed.2d 84 (1981); cf. Reyno. Our first inquiry is whether the district court erred in its decision to apply Louisiana law to the claims resulting from the deaths of four of the five decedents.
 
 
 20
 In these diversity cases we are Erie-bound to apply Louisiana's choice-of-law rules to the claims against Pan Am, Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), and against the United States, Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). Louisiana utilizes a two-step process in resolving the choice-of-law issue. The court must first decide whether a "true conflict" exists; do both states have an actual and real interest in the application of its law. If both states do, the court is to apply the law of the jurisdiction with the most significant contacts with the case. Ashland Oil, Inc. v. Miller Oil Purchasing Co., 678 F.2d 1293 (5th Cir.1982); Burns v. Holiday Travels, Inc., 459 So.2d 666 (La.App.1984); Lee v. Ford Motor Co., 457 So.2d 193 (La.App.), writ denied, 461 So.2d 319 (La.1984); Shaw v. Ferguson, 437 So.2d 319 (La.App.1983); see also Jagers v. Royal Indemnity Co., 276 So.2d 309 (La.1973). Both questions are answered by reference to the Restatement (Second) on Conflict of Laws. Brannon v. Babin, 366 So.2d 955 (La.App.1978); Sutton v. Langley, 330 So.2d 321 (La.App.), writs denied, 332 So.2d 805 and 333 So.2d 242 (La.1976).
 
 
 21
 Pan Am contends that since its proffered stipulation left only the question of damages, Uruguay, the domicile of both plaintiffs and decedents, is the only jurisdiction with an interest in the amount of recovery and its law should be applied. See, e.g., Mahfoud v. Eastern Airlines, Inc., 17 Avi.Cases (CCH) 17,714 (W.D.La.1982), aff'd, 729 F.2d 777 (5th Cir.1984), aff'd on other grounds by an equally divided court, 474 U.S. ----, 106 S.Ct. 586, 88 L.Ed.2d 522 (1985); Guillory v. United States, 699 F.2d 781 (5th Cir.1983) (Texas law applying Second Restatement ); Sibley v. KLM, 454 F.Supp. 425 (S.D.N.Y.1978); Junco v. Eastern Airlines, Inc., 399 F.Supp. 666 (S.D.N.Y.1975), aff'd, 538 F.2d 310 (2d Cir.1976); Gordon v. Eastern Airlines, Inc., 391 F.Supp. 31 (S.D.N.Y.1975); Manos v. TWA, Inc., 295 F.Supp. 1170 (N.D.Ill.1969); Reich v. Purcell, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967); Long v. Pan American World Airways, Inc., 16 N.Y.2d 337, 266 N.Y.S.2d 513, 213 N.E.2d 796 (1965); Griffith v. United Airlines, 416 Pa. 1, 203 A.2d 796 (1964); but see Reese, The Law Governing Airplane Accidents, 39 Wash. & Lee L.Rev. 1303 (1982).
 
 
 22
 At first blush it would appear that Uruguay has the most significant interest in these cases. Upon closer examination, this appearance fades. It is obviously in Uruguay's interest that its citizens be fairly compensated for the wrongful death of family members. But once it is determined that recovery under Louisiana law equals or exceeds that available under Uruguayan law, the interest of Uruguay recedes. If the law of Louisiana provides more compensation for these losses than does the law of Uruguay, it is beyond the pale of reason to conclude that Uruguay would have an interest in prohibiting the award, provided no Uruguayan defendant is involved. We are persuaded that the needs of the international system will be served best in this instance by application of the law of Louisiana. Restatement (Second) on Conflict of Laws Sec. 6(2)(a).
 
 
 23
 Similarly, under Secs. 175 and 178 of the Restatement (Second) on Conflict of Laws, the law of Louisiana as the place of injury would apply absent a strong, countervailing Uruguayan interest. No such interest was demonstrated. We therefore conclude that the Louisiana courts would apply Louisiana law in these cases, consistent with the principles expressed in the referenced Second Restatement sections. We affirm the district court's conclusion. See Price v. Litton Systems, Inc., 784 F.2d 600 (5th Cir.1986) (weighing Second Restatement factors); see also O'Rourke v. Eastern Airlines, Inc., 730 F.2d 842 (2d Cir.1984) (applying New York law).
 
 
 24
 Based on this reasoning, we find no error in the district court's application of Uruguayan law recognizing Pampin's claim for the death of his aunt. Louisiana law provided no remedy; the law of Uruguay did. Under Secs. 175 and 178 of the Restatement (Second ) on Conflict of Laws, the law of Uruguay was applied appropriately.[4]
 
 
 25
 We agree with the district court's choice-of-law determination. Louisiana law properly was made applicable to all elements of the damages claim except for the nephew/aunt status question resolved under Uruguayan law. That being so, the district court's ruling on the forum non conveniens motion will be upheld unless the private-interest and public-interest factors of Gulf Oil, set forth in footnote 2, compel otherwise. A studied review of the private interests of the litigants, and the public interest factors set forth in Gulf Oil does not result in the conclusion that a dismissal was compelled. Indeed, a casual review reflects that the enumerated factors do not even preponderate, in this case, in favor of dismissal on the grounds of forum non conveniens. The very reverse is manifest. These cases should have been tried in the very forum in which they were tried, the place where this tragic accident occurred. The trial court correctly denied the motion to dismiss on the grounds of forum non conveniens.
 
 
 26
 2. Limitation of liability.
 
 
 27
 Pan Am argues that the district court erred in failing to apply the $75,000 limitation for the wrongful death of an international traveler, prescribed by the Warsaw Convention, as modified by the Montreal Agreement of 1971. See Order E-23,680, Docket No. 17,325 (CAB 1966), reprinted at 31 Fed.Reg. 7302 (1966); see also 14 C.F.R. Secs. 203.1 et seq. It is conceded that the notice of limitation of liability given to the decedents was in nine-point type, not in the required ten-point type. Pan Am argues that the difference in the size of the type is of no consequence, that the notice was legible and sufficient.
 
 
 28
 We are not persuaded. We agree with our colleagues of the Second Circuit who rejected this argument in In re Air Crash Disaster at Warsaw, Poland, 705 F.2d 85 (2d Cir.), cert. denied sub nom. Polskie Linie Lotnicze v. Robles, 464 U.S. 845, 104 S.Ct. 147, 78 L.Ed.2d 138, reh'g den., 464 U.S. 978, 104 S.Ct. 416, 78 L.Ed.2d 353 (1983) (8.5 point type). We accept and adopt the reasons assigned by Judge Oakes for the Second Circuit panel in concluding that 10-point type means exactly that, 10-point type. We affirm the judgment of the district court striking the liability-limitations defense.
 
 
 29
 3. Preimpact damages.
 
 
 30
 Both juries heard the same testimony relevant to preimpact mental pain and suffering. Both independently returned verdicts of $25,000 for the injury sustained by each of the five decedents. Appellants contend that these awards lacked any evidentiary basis. Albeit sparse, the evidence presented was sufficient to posit a jury question.
 
 
 31
 The juries heard the testimony of Opal Bode and Evelyn Pourciau who were on the ground near the point of impact. Pourciau testified that because of the location of her house she had heard many aircraft but the engines of this one were "not running right." Hearing trees cracking she looked up and saw the plane with its wings perpendicular to the ground. Moments later it crashed, exploded, and burned. Sparse though it may be, this was sufficient evidence to raise a jury issue. The combination of circumstances, the unusual sound of the engines, the violent manuevering of the large aircraft until it was flying 90? off level, with a wingtip smashing trees as it plummeted to the ground, provided an adequate basis from which the jury could draw reasonable inferences about the mental state of the passengers in the final seconds before the disastrous impact. We find a sufficient evidentiary basis for an award of preimpact fear and anguish. Pregeant v. Pan American World Airways, Inc., 762 F.2d 1245 (5th Cir.1985); Haley v. Pan American World Airways, Inc., 746 F.2d 311 (5th Cir.1984). We are persuaded, however, that the amount awarded is excessive in each instance.
 
 
 32
 There is much disagreement over the determination of a proper award for nonpecuniary damages. For example see In re Air Crash Disaster Near New Orleans, 767 F.2d 1151, 1160 (5th Cir.1985) (Tate, J., dissenting) (Giancontieri). But there is little disagreement over the controlling rubrics by which we assess a jury's award, particularly one which has passed muster before the trial judge. We capsulated the rules in Caldarera v. Eastern Airlines, Inc., 705 F.2d 778 (5th Cir.1983), reminding that "the jury's award is not to be disturbed unless it is entirely disproportionate to the injury ... so large as to 'shock the judicial conscience,' ... so exaggerated as to indicate 'bias, passion, prejudice, corruption, or other improper motive.' " 705 F.2d at 784 (footnotes omitted). We are not dealing with mere semantics.
 
 
 33
 In Haley we upheld an award of $15,000 for preimpact anguish; in Pregeant $16,000 was affirmed. However the quantity and quality of the evidence in Haley and Pregeant exceeded that presented to the Trivelloni and Pampin juries. In the earlier cases there was evidence simulating the takeoff and crash, and psychiatric testimony about the probable condition and reaction of the passengers. The record before us contains no such evidence. As a consequence, we are convinced that the $25,000 award for the preimpact suffering of the decedents far exceeds this circuit's maximum recovery rule. On the evidence presented, those awards should not have exceeded $7,500 for each decedent. Appellees will be given the option of a remittitur of $17,500 on each preimpact damage award, or a new trial on that element of damages.
 
 
 34
 4. Postimpact damages.
 
 
 35
 The only award for postimpact damages related to Pampin's aunt. Pan Am argues the lack of a sufficient evidentiary base here as well. We find otherwise.
 
 
 36
 In support of this claim Pampin points to the testimony of Opal Bode and Dr. Alvaro Hunt, a forensic pathologist in the office of the Coroner of Jefferson Parish, Louisiana. Mrs. Bode, whose home was only a few feet from the point of impact, testified that she heard screams coming from the burning fuselage after the plane crashed and before it exploded. Dr. Hunt's testimony and the autopsy report showed that Ms. Alvarez died from third-degree burns and charring over 95% of her body. No limb severance or other trauma was observable. Her hands and feet were burned off. Autopsies of the other Pampins, seated next to Ms. Alvarez, reflected that they died of massive traumatic injuries sustained at the moment of impact. Ms. Alvarez had no such injuries.
 
 
 37
 In Pregeant we upheld an award for postimpact pain and suffering by another victim of this crash. Dr. Hunt could not testify if Ms. Alvarez was conscious after impact, but based on his findings he concluded that if she was conscious it would have taken several seconds before she lost consciousness from the flash fire and explosion. In Pregeant we recognized that no one could know with certainty who was not conscious after impact. But the jury may draw reasonable inferences from the evidence. Although the question is obviously close, the nature of Alvarez's injuries, as compared to the injuries of those around her, and the reason assigned for her death, as compared to the deaths of the others, and the testimony of Opal Bode about the screams after impact, provided the jury with the basis for a reasonable inference that Ms. Alvarez was conscious briefly and suffered postimpact pain and suffering. The award for that injury is upheld.
 
 
 38
 5. Love and affection awards.
 
 
 39
 Pan Am challenges the awards to the 25 year-old Pampin of $250,000 for the loss of his 52 year-old mother's love and affection and $150,000 for the loss of love and affection of his sister. The evidence reflects that there was an intimate, loving relationship existing between Pampin and his mother and sister. There were daily contacts encompassing every facet of their lives. When Pampin married, rather than draw away from his consanguineal family, he brought his wife into that close unit. They worked, lived, and played together. Pampin looked to his principled and strongcharactered mother for guidance and advice in personal and business matters. The camaraderie existing between Pampin and his sister, playful and good-natured, had an almost storybook quality. Pampin lost the majority of his family in this accident. Though difficult to measure, the magnitude of the multiple loss must be given consideration.
 
 
 40
 We are not prepared to say that the award for the death of Pampin's mother crosses the "shocking the judicial conscience and reflecting bias, passion, prejudice, corruption, or other improper motive" threshold. We decline to disturb the jury's assessment of that nonpecuniary loss. But the award for the death of the sister does cross that threshold. A review of all similar cases, state and federal, discloses no support for an award of $150,000 for the loss of love and affection of a sibling. Applying our maximum recovery rule, we conclude that the maximum nonpecuniary recovery for this loss is $50,000. A remittitur of $100,000 or a new trial on this element of damages is ordered.
 
 
 41
 6. Discounting of damages.
 
 
 42
 Pan Am next argues that the district court erred in not charging the juries to discount the awards of damages for loss of love and affection. Pan Am argues that damages for loss of love and affection compensate a plaintiff for future loss as well as present loss of the decedent's love and affection and therefore should be discounted to reflect present value. In support of its position, Pan Am cites Metz v. United Technologies Corp., 754 F.2d 63 (2d Cir.1985), in which the Second Circuit, interpreting Louisiana law, held that an award of damages for future pain and suffering in a personal injury action should be discounted.
 
 
 43
 As an Erie court, we must resolve this issue by applying Louisiana law. Lin v. McDonnell Douglas Corp., 742 F.2d 45, 52 n. 10 (2d Cir.1984); O'Rourke v. Eastern Airlines, Inc., 730 F.2d 842, 857 n. 24 (2d Cir.1984); see Devitt & Blackmar, 3 Federal Jury Practice and Instructions Sec. 85.13 (3d ed. 1977). We find Metz inapposite; it deals only with awards for future pain and suffering in a personal injury action.[5] Although we find no dispositive Louisiana precedent, we are unpersuaded that Pan Am's contention is supported by Louisiana law, whatever its logic as a matter of economics.
 
 
 44
 In a wrongful death action under article 2315 of the Louisiana Civil Code, loss of society is considered an "immediate" damage, not a future or prospective damage. See Andrus v. White, 101 So.2d 7 (La.App.), reversed in part on other grounds, 236 La. 28, 106 So.2d 705 (1958); Comment, Elements of Damages for Wrongful Death in Louisiana, 20 La.L.Rev. 357 (1960), reprinted in Studies in Louisiana Torts Law, 590 (Malone & Guerry, eds., 1970); see also Brown v. S.A. Bourg & Sons, Inc., 239 La. 473, 118 So.2d 891 (1960) (discounting award for future support but not for loss of love and affection in wrongful death case); Duvernay v. State, 433 So.2d 254 (La.App.), writ denied, 440 So.2d 254 (La.1983) (same); see also McFarland v. Ill. Cent. R. Co., 241 La. 15, 127 So.2d 183 (1961). We therefore believe the district court, schooled and skilled in the law of Louisiana, did not err in refusing Pan Am's requested charge that damages for loss of love and affection be discounted to present value.
 
 
 45
 7. Prejudgment interest.
 
 
 46
 Pan Am contends that the computation of interest was erroneous for two reasons. First, it argues that interest should not have been awarded from the date of judicial demand on damages for loss of future love and affection. We reject this argument for the reasons assigned in section 6, supra.
 
 
 47
 Second, Pan Am points out that the judgment erroneously awards interest against the United States from the date of judicial demand. Pan Am is correct; the United States is liable for interest on an award only from the date of judgment. 28 U.S.C. Sec. 2674. That portion of the judgment therefore must be vacated and a correct judgment entered on remand.
 
 
 48
 We AFFIRM in part, VACATE in part, REVERSE in part, and REMAND to the district court for entry of a judgment consistent herewith.
 
 
 
 [1]
 Pursuant to a joint stipulation, all defendants other than Pan Am and the United States were dismissed
 
 
 [2]
 In Gulf Oil, 330 U.S. at 508-09, 67 S.Ct. at 843, the Supreme Court taught:
 An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.
 Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.
 
 
 [3]
 We need not address the open question whether we are bound by Louisiana forum non conveniens doctrine or federal doctrine, see Reyno, 454 U.S. at 248 n. 13, 102 S.Ct. at 262 n. 13, since Louisiana courts apply the Gulf Oil analysis. Smith v. Globe Indemnity Co., 243 So.2d 882 (La.App.1971); La.C.C.P. art. 123
 
 
 [4]
 Pan Am also argues that even if Uruguayan law is applied to Pampin's claims for Alvarez's death, he may not recover because he failed to show that he was the succession representative of Alvarez's estate. Pampin demonstrated that under Uruguayan law a nephew may recover damages for the wrongful death of his aunt. That showing satisfies Fed.R.Civ.P. 44.1. Pan Am's claim that Pampin could not recover for Alvarez's death unless he had been appointed succession representative was unsupported by any Uruguayan authority. The district court properly rejected this assertion
 
 
 [5]
 In Metz the Second Circuit appeared to be following its own rule on this issue, Chiarello v. Domenico Bus Service, 542 F.2d 883 (2d Cir.1976); DeChico v. Metro-North Commuter R.R., 758 F.2d 856 (2d Cir.1985). For the majority rule see Devitt & Blackmar, 3 Federal Jury Practice and Instructions Sec. 85.13 (3d ed. 1977)