**MUNTZ, TV, INC., Plaintiff,**

v.

**TRAV-LER RADIO CORPORATION, Defendant.**

No. 56 C 1874.

United States District Court
N. D. Illinois, E. D.

Oct. 9, 1959.

**624**

George E. Frost and John F. Verhoeven, Chicago, Ill., Attorneys for plaintiff.

Olson, Mecklenburger, von Holst, Pendleton & Neuman, Chicago, Ill., Attorneys for defendant.

ROBSON, District Judge.

This is a contract action wherein plaintiff seeks to recover the royalties defendant agreed to pay for the use of a design of a television receiver supplied by plaintiff to defendant. It is defendant's position that the agreement was for a design which was completely and immediately operable; that the design plaintiff furnished it was not in operable condition and was not in fact used by it; that instead it designed its own receiver in accordance with other receivers available to it under licenses from RCA and Hazeltine or from competitors' models, and from the efforts of its own engineering staff.

About May 24, 1955, defendant's agents went to plaintiff's place of business and were shown what was purported to be a model 621 in operation. They were not permitted to view the circuitry until they contracted for the purchase of the design, which contract was effected by an undated letter sent about May 24. A down payment of $5,000 was enclosed and a 50¢ fee was to be paid for each model 621, 624 and 627 it manufactured until $25,000 had been paid, and thereafter 25¢ on each complete receiver. No payment other than the $5,000 was made. The $5,000 payment is the basis of defendant's counterclaim against plaintiff.

■ After a careful study of the entire record and interrogatories, the Court is of the opinion that the receivers which defendant made and marketed were so different from that supplied by plaintiff that no liability arises under the contract for the payment of royalties in that its receivers did not embody the design of the receivers named in the contract. The Court also concludes that the receivers and designs furnished by the plaintiff to the defendant were not in such completely operable condition as to be subject to immediate production by defendant, as is in part evidenced by the fact that plaintiff itself made extensive changes in the design and did not start production until the end of August, 1955.

The letter, which is the concrete evidence of the contract, states that the royalty payment was to be made on each "complete television receiver *using the design and circuitry* in * * * model 621, 624 and 627." Two pilot run television receivers of Model 621 and engineering drawings and bill of materials on all the models were furnished defendant after the $5,000 payment.

The defendant's chief TV engineer, Eugene Harralo, testified he started work on the design of the defendant's receivers, on which plaintiff seeks royalties, in June of 1955 and completed the design in the middle of July. He stated the plaintiff's model and circuit diagram did not conform to the representations concerning marketability, completion of engineering work or readiness for production and were not engineered to defendant's standards. He also said that the receiver plaintiff furnished defendant did not operate the same as the one

seen in the plaintiff's office. Furthermore, it was defendant's understanding that it was purchasing a completely developed TV receiver that could be put into production on the very next day without spending any time on the design or modifying any portion of the circuit.

Defendant's employee, Ellis Friedman, in charge of manufacturing, testified that the model it received was not acceptable as to sound and sync; the picture was not stable but would roll and lose horizontal and vertical sync, the sound was distorted and there was a buzz or hum.

It is not questioned that defendant received a model of plaintiff's design, and that its TV engineer examined it, but he testified it was not used, and that its operation was deficient in the respects just named. He stated that defendant's model was completely different from plaintiff's receiver, and even plaintiff's engineer noted several differences in the receivers. This same engineer also noted the changes between the May, 1955, drawings and its service manual for Model 621. Defendant contends that its designs were based upon designs of other companies from which it had licenses, or from inspection of the models which it purchased of other companies.

Although plaintiff stated in answer to an interrogatory that Model 621 was in condition on May 24, 1955, when the pilot run was completed, and that receivers "were in condition for mass production" at that time, plaintiff's own regular production of that model did not begin until August 31 and it states that even at that time seven changes had been made in the receiver. These facts would be supportive of a conclusion that plaintiff as well as defendant·felt the model was not sufficiently complete and operable for immediate production as the ·contract for royalties contemplated.

The Court, therefore, concludes that the testimony and pleadings support the conclusion that plaintiff failed to furnish receivers which were immediately oper-

able, and furthermore that defendant did not utilize the design of plaintiff's models, and therefore is not liable for the royalties provided for in the contract.

■ *Counterclaim.* The contract of the parties was executed about May 24, 1955; the complaint was filed November 8, 1956, and the counterclaim seeking return of the $5,000 down payment on the contract was filed February 1, 1957. The tardiness of defendant's assertion of the right to rescission precludes its allowance in this suit. The principle is well established that "in order to rescind, a party must promptly so elect * * * on discovery of the facts from which it arises." Lichter v. Goss, 7 Cir., 1956, 232 F.2d 715, 720; Mock v. Higgins, 1954, 3 Ill.App.2d 281, 121 N.E.2d 865; Stoner v. Stoner, 1953, 351 Ill.App. 304, 115 N.E.2d 103; Resnick v. Varouxakis, 1943, 319 Ill.App. 51, 48 N.E.2d 555; Mann v. Ahrens, 1917, 205 Ill.App. 183. Defendant, according to its testimony, tested the models it was supplied very shortly after receiving them and found them so defective it abandoned any thought of utilizing the design. At the end of the year 1955, it charged the $5,000 payment off its books. When plaintiff's agents came to defendant's plant shortly after furnishing the models, no questions were asked of them by defendant's chief TV engineer concerning the inadequacies of the design or models. The overall situation revealed is one where defendant bought models which it hoped would enable it to produce a new low-priced line but found its expectations ill-founded and resigned itself to its bad bargain until roused by the suit against it for royalties, and the counterclaim came as an afterthought—too late to be legally supportable. The claim of the counterclaim is denied.

Counsel are directed to prepare and submit within twenty days simplified findings of fact and conclusions of law in accordance with this decision.