### In re KOREAN AIR LINES DISASTER OF SEPTEMBER 1, 1983.

#### No. 83 Civ. 8428 (CBM).

United States District Court,
S.D. New York.

Nov. 20, 1992.

Needham & Warren, Boston, MA by W. Paul Needham, Kevin M. Hensley, Christopher Lovell, P.C., New York City, plaintiffs Marjorie Zicherman and Muriel Mahalek.

Condon & Forsyth, New York City by George N. Tompkins III, defendant Korean Air Lines, Inc.

## AMENDED OPINION ON PRE-TRIAL MOTIONS

MOTLEY, District Judge.

■ This case arises out of the tragic downing of Korean Air Lines Flight KE007. On September 1, 1983, while the plane was en route from New York to Seoul, South Korea, the plane strayed into Soviet airspace and was shot down by Soviet military aircraft over the Sea of Japan. All 269 persons aboard were killed. Muriel A.M.S. Kole was among those who perished. Muriel Mahalek, her mother, and Marjorie Zicherman, her sister and executrix of her estate, are among the many surviving relatives who filed suit to recover damages under the Warsaw Convention which applies specifically to such airline disasters and to which the United States is a party.[1]

## BACKGROUND

All federal court actions in the United States arising out of this disaster were transferred in 1983 to the United States District Court for the District of Columbia (Chief Judge Aubrey E. Robinson, Jr.) for coordinated and consolidated proceedings on the common liability issues.

The common liability issues—whether the destruction of Flight KE007 by Soviet military aircraft was proximately caused by the "wilful misconduct" of KAL or its employees within the meaning of Article 25 of the Warsaw Convention and whether punitive damages are recoverable—were tried to a jury in the District of Columbia. The jury returned a verdict finding that the downing of Flight KE007 and the deaths of all on board were proximately caused by the "wilful misconduct" of the flight crew of Flight KE007 and assessed punitive damages against KAL. Individual compensatory damages were to be separately determined. The Court of Appeals for the District of Columbia Circuit upheld the jury finding of "wilful misconduct." However, it vacated the punitive damage award, holding that the Warsaw Convention does not permit the recovery of punitive damages. *In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475 (D.C.Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991) ("*In re Korean Air Lines*"). *Accord In re Air Disaster at Lockerbie, Scotland*, 928 F.2d 1267 (2nd Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991) ("*Lockerbie*"). Plaintiffs and KAL each filed a petition for a writ of certiorari. Both petitions were denied by the United States Supreme Court on December 2, 1991. *Dooley v. Korean Air Lines Co., Ltd.*, —— U.S. ——, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991). The common liability issues having been determined (*i.e.* the existence of Article 25 "wilful misconduct" which lifts the otherwise

---

1. Convention for the Unification of Certain Rules Relating to International Transportation by Air, *done* at Warsaw, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876, 137 L.N.T.S. 11 (1934), *reprinted at* 49 U.S.C.App. § 1502 note. The Warsaw Convention was supplemented by the Montreal Agreement, Agreement Relating to Liability Limitations of the Warsaw Convention and the Hague Protocol, CAB Agreement 18900, note following 49 U.S.C.App. § 1502 (approved by CAB Order E–23680, May 13, 1966, 31 Fed.Reg. 7302). Typically, airplane crash damages recovery under the Warsaw Convention is restricted by the $75,000 cap of the Montreal Agreement. However, where there is a finding of "wilful misconduct," as in this case, the cap does not apply.

applicable $75,000 cap on damages in airline crashes and the non-recoverability of punitive damages), these cases were remanded by the Judicial Panel on Multidistrict Litigation to the original transferor courts for trial of issues relating to compensatory damages and by whom recoverable.

### Plaintiffs' and Defendant's Claims Regarding Damages

The instant case is now before this court for trial on the issue of compensatory damages sought by decedent's mother and sister in their individual capacities and by the sister as the executrix of decedent's estate for the benefit of the estate and its beneficiaries. Plaintiffs' amended complaint in this action seeks recovery of damages under the Warsaw Convention or the Death On the High Seas Act ("DOHSA").[2] Plaintiffs seek to recover for both pecuniary and non-pecuniary losses under the Warsaw Convention or, in the alternative, pecuniary losses under DOHSA.

Plaintiffs' contend that the Warsaw Convention creates a cause of action for injuries sustained in favor of any person who has suffered any loss whether pecuniary or non-pecuniary as a result of an airplane accident or disaster. Decedent's mother seeks damages for mental anguish and grief associated with her daughter's death as well as loss of love, affection, and companionship. Decedent's sister also seeks damages for such losses in her individual capacity. As executrix of her deceased sister's estate, the sister seeks to recover for decedent's conscious pain and suffering before her death on the plane and loss of the quality or enjoyment of life as well as loss of support, loss of services, and loss of inheritance for herself and decedent's mother.

Defendant's basic claim is that plaintiffs are limited to an action brought by decedent's estate for decedent's wrongful death caused by the plane disaster, a cause of action provided for by the DOHSA, and the recovery of pecuniary losses

only as provided by DOHSA. *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). Defendant has made several pre-trial motions alleging the procedural and substantive impact of DOHSA. DOHSA, enacted by the Congress in 1920 to provide specifically for a remedy in admiralty for the dependent survivors of seamen for wrongful death on the high seas, applies only when death occurs on the high seas more than a marine league (3 miles) from the shore of any state, the District of Columbia, or any territory of the United States and has been construed by the Supreme Court to limit dependent survivors' losses to pecuniary losses. *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 622–23, 98 S.Ct. 2010, 2013–14, 56 L.Ed.2d 581 *reh'g denied*, 439 U.S. 884, 99 S.Ct. 232, 58 L.Ed.2d 200 (1978); *Miles*, 498 U.S. at 31–32, 111 S.Ct. at 325, 112 L.Ed.2d at 290.

### Parties Pre–Trial Motions

Accordingly, defendant moves to: 1) strike plaintiffs' jury demand; 2) limit the determination of damages to those available under DOHSA; 3) dismiss decedent's mother, Muriel Mahalek, as a party plaintiff; 4) preclude the testimony of plaintiffs' economist with respect to lost future wages of decedent; 5) dismiss claims for decedent's pre-death pain and suffering; 6) preclude the testimony of experts relevant to this issue; 7) preclude recovery for plaintiffs' grief, mental distress, and loss of decedent's love and companionship; and 8) exclude any reference to and evidence of "wilful misconduct" on the part of KAL as found by the jury in the joint liability trial.

Plaintiffs seek additional recovery for decedent's loss of the quality and enjoyment of life and have moved to exclude the testimony of decedent's husband, Michael Kole.

### Summary Of This Court's Holdings On The Parties Motions

This court holds that plaintiffs are entitled to a jury trial; that the determination of damages and by whom recoverable un-

---

**2.** Death On the High Seas Act, 46 U.S.C.App. § 761 *et seq.* Plaintiffs claim that they amended their complaint to include DOHSA as alternative pleading in the event that the measure of damages was held to be limited by DOHSA under the Warsaw Convention as alleged by defendant.

der the Warsaw Convention are not limited by DOHSA; that survival actions are permitted under the Warsaw Convention; that the estate may recover for decedent's conscious pain and suffering prior to her death; that the estate cannot recover for decedent's loss of the quality or enjoyment of life; that estate may recover for loss of support, lost services and loss of inheritance for any dependent survivors or beneficiary of the estate; that the individual non-dependent plaintiffs suing in their individual capacities may recover for mental injury connected to physical injury, loss of love and affection, lost inheritance, and lost services. Muriel Mahalek may, therefore, proceed as a party plaintiff. The testimony of Michael Kole, decedent's husband, a non-party, will be excluded as too prejudicial. References to the prior jury's finding of "wilful misconduct" where relevant will not be excluded, and the inability to impose punitive damages will be part of the court's instructions to the jury.

### Law Applicable To Warsaw Convention Cases

The Warsaw Convention is a treaty signed by many nations, including the United States. It was ratified by the Senate as required by the Constitution. U.S.CONST. art II, § 2. It is thus the Supreme law of the land. *See Lockerbie*, 928 F.2d at 1278. The Second Circuit in *Lockerbie* held that the Warsaw Convention is a federally-created cause of action, preempting all state causes of action, and must be construed exclusively under federal common law. *See also In re Inflight Explosion on Trans World Airlines, Inc. Aircraft Approaching Athens, Greece on April 2, 1986*, 778 F.Supp. 625, 629 (E.D.N.Y.1991), *rev'd on other grounds*, 975 F.2d 35 (2nd Cir.1992) (*"Inflight Explosion"*). The Warsaw Convention, after providing for suit for "damages sustained" (Warsaw Conv., art. 17) by passengers or their "survivors" (*In re Korean Air Lines*, 932 F.2d at 1485–86), provides that questions as to who are the persons who have the right to bring suit and what are their respective rights, measure of damages, as well as procedural questions, shall be determined by the national law of the court where suit is brought. Warsaw Conv., art. 24(2). *Lockerbie*, 928 F.2d at 1283. Therefore, the determination of the issues brought on by defendant's motions are governed by federal law and since the Warsaw Convention, the source of plaintiffs' causes of action, is a federal statute, in construing that statute, federal courts must look to, apply, and develop federal common law. *Lockerbie*, 928 F.2d at 1278–79.

### RIGHT TO A JURY

Defendant claims that there is a federal statute, DOHSA, which provides the exclusive remedy in this case under the Warsaw Convention. Defendant also argues that DOHSA is an action which can only be heard by this court sitting in admiralty without a jury, since juries are not available in admiralty. *Waring v. Clarke*, 46 U.S. 441, 464, 12 L.Ed. 226 (1847) ("civil causes of admiralty and maritime jurisdiction shall not be tried by a jury"); *Romero v. International Terminal Operating Co.*, 358 U.S. 354. 371 n. 28, 79 S.Ct. 468, 479 n. 28, 3 L.Ed.2d 368 (1959), *reh den*, 359 U.S. 962, 79 S.Ct. 795, 3 L.Ed.2d 769 (1959) (no jury right in admiralty). Defendant thus moves to strike plaintiffs' jury demand. Defendant's motion to strike plaintiffs' jury demand is denied.

Since it has been determined, by the Second Circuit, that the applicable law is the Warsaw Convention, a federal statute, which must be construed in the light of federal law, we must first look to the statute. The Warsaw Convention neither provides for nor bars jury trials in cases arising under it. Since Congress has not provided that Warsaw Convention claims be tried by jury and has not barred juries in such cases, we must look to federal common law and other federal statutes for guidance. DOHSA is only one such federal statute. Both the Federal Employers' Liability Act ("FELA") [3] and the Jones Act [4]

---

3. Federal Employers' Liability Act, 45 U.S.C.S. §§ 51 *et seq.* (1992).

4. 46 U.S.C.App. § 688(a) (Supp.1991). The Jones Act provides a cause of action against shipowners for their negligence when a seaman is injured on board:

> Any seaman who shall suffer personal injury in the course of his employment may, at his

contemplate jury trials in negligence, survival, and wrongful death cases for railroad employees and seamen, respectively. In Civil Rights Cases and *Bivens*-type cases,[5] juries are allowed where damages are sought for violations of constitutional and civil rights.[6] Congressional policy and federal common law thus seem to favor jury trials in personal injury and wrongful death cases, and Congress has not proscribed jury trials under the Jones Act, which provides for a seamen's action at law, notwithstanding the fact that he might have brought an action in admiralty to recover for his injuries. *Miles,* 498 U.S. at 25–30, 111 S.Ct. at 321–324, 112 L.Ed.2d at 285–288.

Applying DOHSA strictly to exclude jury trials would impair the national uniformity which the Second Circuit says the Warsaw Convention was intended to create. *Lockerbie,* 928 F.2d at 1270. If DOHSA strictly applied to preclude jury trials, then international airplane accidents occurring on the high seas would not be tried by a jury while international accidents not occurring on the high seas could be tried before a jury. National uniformity requires that all Warsaw Convention cases be tried before juries.

The jury trial issue in Warsaw Convention cases was expressly raised and decided by Chief Judge Robinson in this case in *In re Korean Air Lines Disaster of September 1, 1983,* 704 F.Supp. 1135 (D.D.C.1988) (*"Korean I"*) and *In re Korean Air Lines Disaster of September 1, 1983, et al.,* 798 F.Supp. 750 (D.D.C.1992) (*"Korean II"*) and is, therefore, the law of the case. *See also Yun v. Korean Air Lines,* 798

F.Supp. 755 (E.D.N.Y.1992) (jury trial is law of the case and jury trial available under Warsaw Convention even where DOHSA also applies). It was a jury in the District of Columbia that decided that KAL was guilty of "wilful misconduct" and awarded punitive damages. KAL, by not raising the jury trial issue in this Warsaw Convention case on appeal, waived its right to a non-jury trial if it is in fact entitled to trial without a jury. The instant trial sought here on compensatory damages is not a new action. It is the second part of a bifurcated case. The fact that Chief Judge Robinson has certified the jury trial issue to the D.C. Circuit Court of Appeals in the compensatory damages trials now before him in other similar cases is simply irrelevant to whether KAL waived its right to a non-jury trial in this case by not raising the question on appeal.

In *Korean I,* as here, plaintiffs alleged their claims at law and did not plead their claims in admiralty according to Fed. R.Civ.P. 9(h). *Korean I,* 704 F.Supp. at 1151. There, as here, KAL relied primarily upon *Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978) and *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986). Chief Judge Robinson ruled, however, that neither case specifically addressed the question of the right to a jury in Warsaw Convention cases and that "the law of the court" in a Warsaw Convention case was not limited to DOHSA. *Korean I,* 704 F.Supp. at 1152. The latter ruling is also the law of this case.

election, maintain an action for damages at law …; and in case of death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law.... *Id.*

**5.** In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that a cause of action existed to recover money damages for violations of constitutional rights by federal officials.

**6.** *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (*Bivens* remedy, allowing

jury, available even though suit could have been brought under Federal Tort Claims Act ("FTCA"), which does not permit jury trial). *See also Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (suit for damages against FBI agents for violation of Fourth Amendment rights decided by jury); *Jett v. Dallas Independent School District,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) (school teacher's damage claims against superintendent and principal under 42 U.S.C. § 1981 and § 1983 decided by jury); *Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) (school teacher's claims for compensatory and punitive damages under § 1983 decided by jury).

Chief Judge Robinson also concluded, by reference to DOHSA's legislative history, that Congress did not intend to eliminate the right to a jury whenever DOHSA also applies to the facts of a case. *Id.* In *Korean II*, the court also specifically noted that the Supreme Court, long ago, had approved the hearing of all claims a seaman might have in both law and admiralty in a single trial before a jury. *Korean II*, 798 F.Supp. at 753–755 (citing *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963) and *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970)). In *Korean I*, the court concluded:

it cannot be said that jury trials are repugnant to the DOHSA scheme, at least where there are concurrent claims triable by the jury joined with the DOHSA claim

*Korean I*, 704 F.Supp. at 1152. Consequently, DOHSA does not preclude jury trial where there is other applicable law— *e.g.* the Warsaw Convention, itself.

The proper question, then, is "whether the law of th[e] court provides for a jury trial in wrongful death actions brought under the Warsaw Convention." *Id.* at 1153. Chief Judge Robinson answered this question affirmatively. *Id.* at 1153. *See also In re Air Crash Disaster Near Honolulu, Hawaii*, 783 F.Supp. 1261, 1265 (N.D.Cal. 1992) (*"Hawaii II"*) (claims under Warsaw Convention are triable by jury). It should also be noted that long before Chief Judge Robinson and the Court in *Hawaii II* made their rulings, a judge of this court determined that when plaintiffs bring Warsaw Convention claims as well as DOHSA claims, the right to a jury trial is not precluded. *In re Air Crash Disaster in the Ionian Sea on September 8, 1974 and All Other Related Actions*, MDL Docket No. 229, slip op., 1979 WL 2973 (S.D.N.Y. Apr. 10, 1979).

## DAMAGES

Plaintiffs seek to recover money damages for decedent's conscious pain and suffering prior to death, for decedent's loss of the quality and enjoyment of life, and for decedent's future lost wages. They also seek to recover for their own personal mental anguish and grief, for their own personal suffering due to the loss of decedent's love and affection, for loss of support, lost inheritance, and lost services. Plaintiffs, therefore, claim personal damages, damages for wrongful death which are both pecuniary and non-pecuniary, and damages in a survival action on behalf of decedent's estate.

## MURIEL MAHALEK AS PARTY PLAINTIFF

■ Defendant moves to dismiss Muriel Mahalek as a party plaintiff suing in her own right. Defendant argues that under DOHSA only the personal representative of the decedent's estate is permitted to bring a wrongful death action and is limited to pecuniary losses. This court, however, has determined that actions under the Warsaw Convention are not restricted by DOHSA. The Warsaw Convention provides that suit for "damages sustained" may be brought "however founded" and "without prejudice to the questions as to who are the persons who have the right to bring suit." Warsaw Conv. art. 24(2). The Warsaw Convention, as the D.C. Circuit noted, does not limit recovery to the personal representative of the decedent and affirmatively provides for suit by persons other than passengers. *In re Korean Air Lines*, 932 F.2d at 1485–86. Therefore, defendant's motion is denied. Muriel Mahalek may proceed as a party plaintiff and if she can prove any personal loss, as allowed by this decision, may recover for same.

## SURVIVAL ACTION

### *Decedent's Pain and Suffering*

■ Defendant in moving to limit plaintiffs' recovery to pecuniary losses sustained by decedent's dependent survivors argues that DOHSA does not provide for survival actions brought to recover for conscious pain and suffering, a non-pecuniary loss. Defendant's motion is denied.

In *Eastern Airlines, Inc. v. Floyd*, — U.S. ——, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991), the Supreme Court addressed the question whether purely mental injuries were compensable under the Warsaw Con-

vention's language allowing recovery for *lesion corporelle*—bodily injury. Plaintiffs in that case sought damages for mental distress when their plane narrowly avoided crashing during a flight between Miami and the Bahamas. The Court held that a passenger's injury caused by anxiety or shock is not recoverable when unaccompanied by physical injury.

It, therefore, logically follows that where there is physical injury, passengers, who plainly may bring a cause of action under the Warsaw Convention, may recover for injuries which accompanied such physical injuries. Plaintiffs intend to prove that the passengers aboard the ill-fated Flight KE007 were alive for a period of time after their plane was disabled by a Soviet plane's gunfire or missile and that the passengers suffered conscious physical pain and mental terror and anguish prior to their deaths. While the Court in *Floyd* expressly refused to consider the question whether conscious pain and suffering are recoverable in a survival action, since that was not the case before them, the Eastern District, since then, has considered the issue and has determined that damage awards for conscious pain and suffering sought in a survival action are provided for under the Warsaw Convention. *In re Inflight Explosion on Trans World Airlines,* 778 F.Supp. 625 (E.D.N.Y.1991), *rev'd on other grounds* 975 F.2d 35 (2nd Cir.1992), involved a terrorist attack on TWA Flight 840. A jury determined that TWA's failures to take proper security measures were equivalent to "wilful misconduct." *Inflight Explosion,* 778 F.Supp. at 626. In considering the issue of damages for conscious pain and suffering to the passengers, the court in *Inflight Explosion* noted that DOHSA did not preclude recovery for conscious pain and suffering in Warsaw Convention cases:

> the process of fashioning federal common law under the Warsaw Convention does not actually involve applying the DOHSA. Thus, the DOHSA cannot be used to inhibit federal courts from recognizing a survival action under federal

Warsaw Convention treaty common law or general maritime law.

*Id.* at 636. Citing the court's decision in *Lockerbie,* the court in *Inflight Explosion* affirmed plaintiffs' right to recover damages for the pain and suffering of the passengers because recovery for such conscious pain and suffering redresses actual harm, *dommage survenu* (damage sustained), as required under the Warsaw Convention, rather than generalized legal damages such as punitive damages. *Id.* at 636. This court sees no federal statutory or common law bar to the survival action brought by decedent's estate here to recover damages for decedent's conscious pain and suffering prior to her death. *See also In re Air Crash Disaster Near Honolulu, Hawaii,* 783 F.Supp. 1261, 1265) (N.D.Cal. 1992) (*"Hawaii II"*) (considering the interplay of DOHSA and Warsaw Convention and concluding that "[p]laintiffs asserting causes of action on behalf of decedent passengers may recover for the pre-death pain and suffering of the decedent under the cause of action created by Article 17 of the Warsaw Convention.")

Additionally, defendant's motion to preclude the expert testimony of Robert L. Elzy and James F. Foody, neither of whose qualifications have not been questioned, is denied because Mr. Elzy's and Mr. Foody's testimony is relevant to this issue.

### Loss Of The Enjoyment of Life

■ Plaintiffs seek to recover for loss of the enjoyment of life as part of their survival action on behalf of the decedent's estate. Plaintiffs claim that federal courts have allowed damages for lost enjoyment of life as hedonic damages.[7] As support for this proposition, plaintiffs cite only one Circuit Court opinion, *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir.1984) (*citing Guyton v. Phillips,* 532 F.Supp. 1154 (N.D.Cal.1981) *and Heath v. City of Hialeah,* 560 F.Supp. 840 (S.D.Fla.1983)).

*Bell* involved an unlawful killing by Officer Grady of the Milwaukee Police Depart-

---

7. "Hedonic damages" refers to damages for the loss of the enjoyment of life as affected by physical pain and suffering, physical disability, impairment and inconvenience affecting an individual's normal pursuits and pleasures of life.

ment and a conspiracy to conceal the facts surrounding the shooting by several other police officers. Suit was brought under 42 U.S.C. §§ 1981, 1983, 1985 and 1986 against Officer Grady and the other officers who participated in the cover-up. Plaintiffs brought survival actions on behalf of the decedent Bell's estate and wrongful death actions in their individual capacities. Plaintiffs claimed that Officer Grady and the other officers had 1) violated Bell's Fourth and Fourteenth Amendment rights through the use of excessive force and unlawful killing; 2) violated the Fourteenth Amendment rights of Bell's father, Dolphus Bell, by depriving him of an alleged liberty interest in the continued association with his son; 3) violated similar Fourteenth Amendment liberty and associational rights of Bell's siblings, and 4) violated the due process and equal protection rights of Bell's estate and siblings by conspiring to conceal the facts of the shooting.

The Seventh Circuit in *Bell* determined that Wisconsin statutory law creates a survival action in favor of decedent's estate for *pre-death* injuries and a wrongful death action in favor of the decedent's survivors, but neither of these remedies allow recovery of damages for loss of life. *Bell,* 746 F.2d at 1236. Nevertheless, the court went on to determine that where state law is inconsistent with federal civil rights laws, state law should not apply; therefore, Wisconsin law could not "be applied to preclude the estate's recovery for loss of life ..." *Bell,* 746 at 1236. The court noted that state law does not preclude damages for constitutional violations claimed under § 1983 because "[i]t is axiomatic that the Fourteenth Amendment protects individuals from deprivation by the *state* of life without due process." *Bell,* 746 F.2d at 1238 (citation omitted) (emphasis added). As a result, the court concluded that Section 1983 permits recovery for loss of life by the decedent's estate notwithstanding restrictive state laws. *Bell,* 746 F.2d at 1238.

The court's decision in *Bell* was inextricably linked to constitutional violations by state actors. The court noted that "the fundamental policies behind Section 1983 are twofold: compensation for and deterrence of unconstitutional acts committed under state law. One of the primary reasons Section 1983 was enacted was to remedy and deter racial killings and other acts violative of the Fourteenth Amendment." *Bell,* 746 F.2d at 1239 (citations omitted). The facts of *Bell,* § 1983 claims for constitutional violations by state actors, make it irrelevant to the case at hand.

Plaintiffs in this case also refer to two district court cases cited in *Bell: Guyton v. Phillips,* 532 F.Supp. 1154 (N.D.Cal.1984) and *Heath v. City of Hialeah,* 560 F.Supp. 840 (S.D.Fla.1983). Both of these cases also involved § 1983 actions brought against police officers for unlawful killings resulting in a deprivation of life without due process in violation of the Fourteenth Amendment to the Constitution. Plaintiffs here make no claims against state actors and no claims of violations of constitutional rights. While a survival action for loss of life may exist under § 1983 which protects against unconstitutional deprivations of life by state officials, defendant here is not related to any state and therefore not susceptible to the type of due process claims made in *Bell.*

In the context of some personal injury suits, courts have permitted recovery for loss of the quality or enjoyment of life. This recovery, however, has been allowed in non-death cases involving permanent injury because loss of the quality or enjoyment of life in such cases concerns loss which will be sustained during a victim's lifetime, and damages for such losses have been available to the victim, not as damages recoverable by a decedent's estate in a survival action. For example, in *Walsh v. Matthews Chrysler Leasing,* 1990 WL 152066, 1990 U.S. Dist. Lexis 13149 (September 29, 1990), a court in the Northern District of New York awarded damages for loss of the quality of life to a teacher who had been injured in an automobile accident. The court found that Walsh had lived an active life before the accident, teaching classes, as well as bowling, golfing, gardening, and dancing. After the accident, however, she had experienced significant pain and had been unable to pursue these activities. Accordingly, the *court awarded*

damages for loss of the quality of life as well as for pain and suffering and pecuniary damages. *Walsh*, 1990 WL 152066 at 4, 1990 U.S. Dist. Lexis 13149 at 9–12. *Poleto v. Consolidated Rail Corp.*, 826 F.2d 1270 (3rd Cir.1987) involved a FELA claim brought by a rail car inspector who was injured when he fell through rotted floorboards of a rail car. The Third Circuit Court affirmed the District Court's award of damages for the separate categories of "loss of quality or enjoyment of life from the date of the accident to the date of the verdict" and "future loss of quality or enjoyment of life" as well as pecuniary damages. *Poleto*, 826 F.2d at 1273 n. 3. In *Christopher v. United States*, 931 F.2d 59 (table), 1991 WL 63562 1991 U.S.App. Lexis 7825 (April 23, 1991), the Ninth Circuit remanded the District Court's reduction of a general damage award in a personal injury suit. The court specifically instructed that the general damage award was to be apportioned between "losses for physical impairment and disfigurement and losses for pain and suffering, inconvenience, emotional stress, and *impairment of quality of life*." *Christopher*, 1991 WL 63562 at 2, 1991 U.S.App. Lexis 7825 at 4 (emphasis added).

All of these cases involved plaintiffs, suing on their own behalf, for injuries to be suffered during their lifetimes. Loss of the quality or enjoyment of life is not a claim that has typically survived the victim in cases other than Civil Rights Cases as noted above. Therefore, Plaintiffs may not recover damages for loss of the quality or enjoyment of life of the decedent.

### Future Lost Earnings

■ Defendant moves to deny recovery for lost future wages. Plaintiffs claim that the broad language of the Warsaw Convention which provides for recovery of "damage sustained" permits them to recover in a survival action for the wages that decedent would have earned but for the KE007 disaster.

On the other hand, defendant, relying on *Miles*, argues that recent Supreme Court precedent precludes the recovery of future lost earnings by decedent's relatives in this case. While defendant is correct that under *Miles* lost wages may not be recovered in wrongful death actions by survivors of a seaman, lost earnings may be proved for the purpose of determining loss of support and loss of inheritance.

In *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), the mother of a seaman who had been stabbed by a fellow crew member while the ship was docked in the harbor sought to recover damages on behalf of her son's estate and herself. Her action could not be brought under DOHSA which applies only to death on the high seas. The Court's decision in *Moragne* found that a longshoreman could bring a wrongful death action under the general maritime law and recover for loss of society. But Ms. Miles' son was not a longshoreman. In resolving this issue, Justice O'Connor traced the history of survival and wrongful death actions for seamen and longshoremen. She discussed the inconsistency of remedies that had existed due to the interplay of statutory and common law rights in maritime cases. These inconsistencies were thought to have been resolved by the Court's decision in *Moragne*, giving longshoremen's survivors the right to bring an action under general maritime law for wrongful death when a longshoreman lost his life within the three mile zone. Adopting the reasoning in *Moragne*, the Court in *Miles* declared the availability for the survivors of seamen, who lost their lives within the three mile zone, of a general maritime cause of action for wrongful death. *Miles*, 498 U.S. at 29–30, 111 S.Ct. at 324, 112 L.Ed.2d at 289. However, loss of society damages were ruled out for all seamen and longshoremen in the interest of uniformity.

Despite this general maritime cause of action for wrongful death, however, the Court declined to decide whether survival actions may be brought under a general maritime cause of action. Instead, the Court addressed the narrower question of whether future lost earnings are recoverable by a seamen's estate, finding that there is no recovery for lost earnings beyond a seaman's lifetime.

Justice O'Connor concluded that recovery for lost future income where there are de-

pendent survivors of a seaman would often be duplicative of recovery for future loss of support. *Miles*, 498 U.S. at 34–36, 111 S.Ct. at 327, 112 L.Ed.2d at 292. Moreover, the Court noted that a large majority of states preclude recovery for lost future income in survival actions. *Miles*, 498 U.S. at 34–36, 111 S.Ct. at 327, 112 L.Ed.2d at 293. The Court also concluded that the cause of action for the wrongful death of a seaman created by DOHSA and the Jones Act does not include recovery for lost future earnings. *Miles*, 498 U.S. at 34–36, 111 S.Ct. at 327, 112 L.Ed.2d at 292.

*Miles*, however, is not direct precedent in this case. The Court in *Miles* merely sought to create uniformity in the remedies available to seamen and longshoremen. The Court considered the remedies made available by Congress in DOHSA, the Jones Act, and general maritime law and formulated a rule regarding remedies available to the survivors of seamen and longshoremen that would be uniform. The relevant substantive law in this case, as discussed above, is federal common law. While this court may consider DOHSA, the Jones Act, general maritime law, and the Court's decision in *Miles* as analogies, they are not directly relevant or binding. The causes of action created by the Warsaw Convention are broader than either DOHSA or the Jones Act. However, this court finds that where there are surviving dependents, as here, who are entitled to seek loss of support, lost inheritance, and loss of services, as in this case, the argument against double recovery is persuasive. The court, therefore, rules that under the facts of this case lost future wages are not recoverable. Even if plaintiffs were not suing for loss of support as they are now trying to do by advising the court in their supplemental brief on damages that they are not now seeking loss of support, the amount of lost future wages they might recover, as defendant points out, would be subject to reduction by the amounts which the jury finds decedent would have required for her own support and income taxes which she would have had to pay on future lost wages, the same as in loss of support cases. Plaintiffs, therefore, may not be any better situated in seeking lost

future wages in lieu of loss of support, loss of inheritance, and loss of services.

## WRONGFUL DEATH ACTION
### *Loss of Support*

While plaintiffs in this case may not recover for lost future earnings, they may recover for loss of support. *Sea–Land Services, Inc. v. Gaudet*, 414 U.S. 573, 584, 94 S.Ct. 806, 814, 39 L.Ed.2d 9 (1974), *rev'd on other grounds*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990) ("recovery for loss of support has been universally recognized"). The court in *Evich v. Morris*, 819 F.2d 256, 258 (9th Cir.1987), *cert. denied*, 484 U.S. 914, 108 S.Ct. 261, 98 L.Ed.2d 218 (1987) noted that most states allow recovery in the form of loss of support, when wrongful death beneficiaries exist, rather than recovery for future lost wages. *Evich* involved non-dependent brothers of a deceased seaman who filed actions against the owner of the decedent's vessel and the owner of the vessel which attempted to rescue the decedent's vessel. On appeal, the court addressed the question of whether a general federal maritime survival action preempts state law and what damages are recoverable in the federal action.

The court in *Evich* awarded damages for lost future earnings. The court reasoned that the award would prevent the anomaly of making it cheaper to kill a victim rather than simply injuring him. The award of lost future earnings, however, was specific to the facts of *Evich* where there were no dependent survivors entitled to recover for loss of support (here there are) and, therefore, no possibility of duplicative recovery—recovery for loss of support and lost future wages. *See Miles*, 498 U.S. at 34–36, 111 S.Ct. at 327, 112 L.Ed.2d at 292. On the other hand, where dependents do exist, the *Evich* court recognized that most states award damages for loss of support and do not allow damages for future economic loss. *See also O'Rourke v. Eastern Air Lines, Inc.*, 730 F.2d 842 (2d Cir.1984) (In action against airline under Warsaw Convention and against Government, court granted damages for loss of support in

claim against Government under the Federal Tort Claims Act). This court finds that under the facts of this case, damages for loss of support and loss of inheritance are recoverable, and future lost earnings and wages are provable to furnish a basis for determining those losses. Loss of support includes: regular contributions of money and periodic gifts. Defendant does not dispute the provability of future lost wages to serve the determination of loss of support and loss of inheritance.

■■■ The criteria for recovery for loss of support are the following: the decedent's age, health and life expectancy, her financial expectations and prospects for advancement, her earning ability and actual income, her living expenses and income taxes, her past actual financial contributions to the beneficiaries, as well as the number, age, and situation of those dependent on her for support, and the manner in which she would have supported them.

■■■ Because the appropriate criteria for assessing damages for loss of support are set forth above, defendant's motion to preclude the expert testimony of plaintiffs' economist, Conrad Berenson, is denied. Defendant claims that the information provided in discovery is not a sufficient basis upon which plaintiffs' economist can testify as to future earnings. However, Mr. Berenson, whose qualifications are not questioned, would be able to testify as to loss of support based on the criteria set forth above. Therefore, defendant's motion to exclude the testimony of plaintiffs' economist is denied.

### Plaintiffs' Mental Injury and Grief

■■■ Plaintiffs seek damages for their own personal mental anguish in grieving for their deceased daughter and sister. Defendant's again claim that DOHSA does not permit recovery for plaintiffs' grief in a wrongful death action. Generally, there is no recovery for mental anguish in grieving in a wrongful death action. Federal common law has traditionally not allowed recovery for grief. *Miles*, 498 U.S. at 33–34, 111 S.Ct. at 326, 112 L.Ed.2d at 291. *But see Diaz Lugo v. American Airlines, Inc.*, 686 F.Supp. 373 (D.Puerto Rico 1988) (allowing husband's recovery under the Warsaw Convention for emotional distress and loss of consortium for injury to his wife). As the Supreme Court noted in *Miles*, Lord Campbell's Act [8] was passed in England in 1846 to remedy the absence of a right of action for wrongful death. *Miles*, 498 U.S. at 31–32, 111 S.Ct. at 325, 112 L.Ed.2d at 290. The Act was the progenitor of many wrongful death statutes in the United States. In one of the early English decisions on this matter, Justice Coleridge commented that the title of Lord Campbell's Act appropriately fit its meaning: " 'An act for compensating the families of persons killed,' not for solacing their wounded feelings...." *See* STUART M. SPEISER, RECOVERY FOR WRONGFUL DEATH 327 (1975). Federal wrongful death statutes, like DOHSA, generally exclude damages for mental anguish and grief. As the Supreme Court in *Miles* also observed, a majority of states has also denied recovery for grief. *Miles*, 498 U.S. at 34–36, 111 S.Ct. at 327, 112 L.Ed.2d at 292. S. SPEISER, at 327–28.

Mental anguish and grief usually do not arise out of actual injury but arise out of the shock and trying experience of coping with the death of a loved one. Wrongful death recovery generally has been extended only to cover pecuniary losses which are measurable.[9] The exception to the general rule precluding recovery for grief occurs when a survivor's damages extend beyond mere grief to actual mental injury or the

---

**8.** Lord Campbell's Act, 9 & 10 Vic. ch. 93 (1846).

**9.** S. Speiser at 332. The pecuniary loss rule, however, has been recognized as unduly harsh by an increasing number of jurisdictions which now allow recovery for some type of mental anguish and grief either through statute or judicial construction.

Several states have statutes authorizing damages for mental anguish and grief:

Arkansas (Ark.Stat.Ann. § 16–62–102 (1992))
Delaware (10 Del.Code Ann. § 3724)
Florida (Fla.Stat.Ann. § 766.202 (1991))
Kansas (Kan.Stat.Ann. § 60–1904)
Maryland (Ann.Code of Maryland, Courts, Judicial Proceedings § 3–904(e))
Ohio (Ohio Rev.Code § 2125.02(B)(5))
Virginia (Code of Virginia § 8.01–25 (1992))
West Virginia (West Virginia Code § 55–7–6 (1992))

aggravation of a pre-existing physical injury. Mental injury exists if the survivor has been physically debilitated by grief stemming from the wrongful death of a loved one. Mental injury is often accompanied by physical manifestations, *Floyd*, —— U.S. at —— n. 7, —— & ——, 111 S.Ct. at 1496 n. 7, 1498 & 1502, 113 L.Ed.2d at 580 n. 7, 583 & 588, and may require psychological counselling and/or medical treatment. Damages due to mental injury and associated with physical injury are, therefore, "damage sustained" (as required by *Lockerbie*, 928 F.2d at 1281) and estimable when one considers, for example, losses due to time out of work, hospitalization, physical injury, or medical and counselling expenses.

The issue of recovery for injury to the survivors of an air disaster under the Warsaw Convention was also discussed by the D.C. Circuit in considering KAL's liability on appeal from a jury verdict finding "wilful misconduct" and awarding punitive damages. *In re Korean Air Lines Disaster of September 1, 1983, Korean Air Lines Company, Ltd.*, 932 F.2d 1475, 1487 (D.C.Circuit 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991). The D.C. Circuit court observed the fact that the Warsaw Convention does not specify that the damage must be sustained by the passenger in order for damages to be recoverable under the Warsaw Convention. The D.C. Circuit quoted the language of the Warsaw Convention, itself: "liable for damage sustained" and noted that the language of the Warsaw Convention was very broad. *In re Korean Air Lines*, 932 F.2d at 1485. This court, therefore, concludes that the Warsaw Convention permits a non-passenger, surviving close relative, who can prove actual injury to himself or herself, such as actual mental injury accompanied by physical manifestations or aggravation of a pre-existing physical conditions as a result of an airplane accident, to recover for mental injury sustained. While plaintiffs in this case may not recover for grief, per se, they may recover for proved actual mental injury, evidenced by physical manifestations resulting from grief or the aggravation of a pre-existing physical injury resulting from grief.

It should also be noted that the Court's decision in *Floyd* concerned mental injury to passengers and not to surviving relatives. *Id.* —— U.S. at —— n. 7, 111 S.Ct. 1496 n. 7, 113 L.Ed.2d at 580 n. 7. Here we are concerned with the mental injury to surviving relatives and apply the standard used in *Floyd*.

Relevant to the individual plaintiffs' present actual mental injury is the knowledge that Muriel Kole's death was not the result of mere negligence but the result of defendant's "wilful misconduct." Plainly a surviving relative's mental injury could be aggravated by the knowledge that the decedent lost his or her life not as a result of the airline's mere negligence but as a result of the airline's "wilful misconduct." "Wilful misconduct" is obviously a higher standard of wrongdoing then mere negligence. Because defendant's "wilful misconduct" would be a factor in assessing plaintiffs' present actual mental injury, defendant's motion to preclude any reference to KAL's "wilful misconduct," as found by the liability jury, is denied. In an ordinary case, the same jury would decide both liability and damages. The bifurcation here results from the fact that this was a multi-district case.

### Loss of Love and Affection and Companionship

Plaintiffs, as the surviving mother and sister, seek to recover for their loss of decedent's love, affection, and companionship. Recovery for loss of love, affection, and companionship differs from recovery for mental injury in that mental injury is acute and suffered by the survivor as a debilitating condition. Loss of love, affection, and companionship, on the other hand, is an injury suffered over a longer period in duration. The difference between the two injuries is the difference between personal injury and the deprivation or loss of something dear to the one deprived which affects the quality of the survivor's life in a significant way.

Defendant argues that loss of society (which covers the same ground) is not recoverable under DOHSA and that the Su-

preme Court's decision in *Miles* precludes recovery for loss of society. Defendant's argument is not persuasive. The Court's decision in *Miles* applies only to actions brought under the Jones Act, DOHSA, and general maritime law. Moreover, the facts of *Miles* limit it to seamen. *Miles* does not limit remedies available under the Warsaw Convention. Moreover, this court has concluded that the Warsaw Convention is not limited by DOHSA.

Again, in reading the language of the Warsaw Convention, the D.C. Circuit noted that the Warsaw Convention does provide for non-pecuniary losses. The D.C. Circuit noted that the language of Article 17 of the Warsaw Convention in allowing recovery for "damage sustained" refers to "actual harm experienced, whether physical injury to the passenger or, in the case of death, monetary *or other loss* to his survivors." *In re Korean Air Lines*, 932 F.2d at 1485 (citing *In re Air Disaster at Lockerbie, Scotland, on Dec. 21, 1988*, 928 F.2d 1267, 1281 (2d Cir.1991)) (emphasis added). The D.C. Circuit Court interpreted "damage sustained" to include "suffering due to the death of a member of the family." *In re Korean Air Lines*, 932 F.2d at 1487.

In addition to the observations of the D.C. Circuit and the Second Circuit, it should be noted that the Fifth Circuit has twice allowed damages for loss of love and affection in cases brought under the Warsaw Convention and the Federal Tort Claims Act. In *In re Air Crash Disaster Near New Orleans, LA*, 789 F.2d 1092 (5th Cir.1986), *vacated on other grounds*, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400, (1989), relatives of passengers killed in the crash of Pan American World Airways Flight 759 brought suit against Pan Am under the Warsaw Convention and against the United States under the Federal Tort Claims Act. A jury awarded plaintiff $250,000 for "the loss of the love and affection of his mother," and $150,000 for "the loss of the love and affection of his sister." *In re Air Crash Disaster Near New Orleans*, 789 F.2d at 1099. After discussing the intimate relationship that had existed between plaintiff and his deceased mother and sister, the court affirmed the jury verdict as to the loss as to plaintiff's mother and approved $50,000 of the original jury verdict as to the loss as to plaintiff's sister. *In re Air Crash Disaster Near New Orleans*, 789 F.2d at 1100.

*Winbourne v. Eastern Airlines, Inc.*, 758 F.2d 1016 (5th Cir.1984), *cert. denied*, 474 U.S. 1036, 106 S.Ct. 603, 88 L.Ed.2d 582 (1985) involved a suit brought against Eastern Airlines under the Warsaw Convention and against the United States under the Federal Tort Claims Act. Both Eastern and the Government conceded liability. Describing plaintiff as a man crushed by sudden tragedy, the Fifth Circuit affirmed the district court's award of damages for the loss of love and affection of plaintiff's wife and daughters. While Eastern's share of the total damage award was limited by the $75,000 limitation of the Montreal Agreement, the Circuit Court affirmed recovery for damages due to the loss of love and affection. *See also Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778 (5th Cir. 1983) (In suit brought against the airline under diversity jurisdiction applying Louisiana law and against the Government under the Federal Tort Claims Act, Circuit Court permitted award for damages including recovery for loss of companionship, love, and affection and physical and mental anguish); 1 S. SPEISER, RECOVERY FOR WRONGFUL DEATH 313–322 (2d 1975) (majority of jurisdictions allow recovery for society and companionship and several jurisdictions bound by pecuniary loss rule nevertheless allow recovery for "pecuniary value" of society, companionship, counsel, protection and attention).

Because the Second Circuit in *Lockerbie* determined that federal common law applies in interpreting the Warsaw Convention, the measure of damages available under the Convention is governed by federal common law.

 Allowing survivors who are close family members of airline passengers to recover damages for the loss of love, affection and companionship when proved, in an action brought under the Warsaw Convention, is not repugnant to federal common law as presently developed and, moreover, serves the underlying purposes and goals of the Convention. Although pecuniary losses are the only losses recoverable un-

der DOHSA, *Miles*, 498 U.S. at 325, 111 S.Ct. at 325, 112 L.Ed.2d at 290, that federal statute, governing a seaman's death on the High Seas, is not the limit of our search for a remedy under the Convention, especially when the $75,000 limit has been removed. When the limit has been removed by a finding of "wilful misconduct," the policy and underlying purpose of the Convention is to allow for full compensation, not only to the victims of an airline disaster, but to anyone who can prove that he or she sustained damages as a result of the crash of an airliner. *In re Korean Air Lines*, 932 F.2d at 1485 (citing *In re Air Disaster at Lockerbie, Scotland, on Dec. 21, 1988*, 928 F.2d 1267, 1281–1282 (2d Cir. 1991)).

Plaintiffs intend to prove a close, loving relationship between the decedent and her mother and sister in this case. The court, therefore, looks to recent developments in the area of federal common law in other areas outside federal maritime law. There was a time when federal maritime law was the only source of federal tort law. However, in more recent years, the Congress has expanded the areas of federal law giving rise to tort actions, and the federal courts in the last few decades have been busily engaged in construing these new laws and fashioning federal remedies. Perhaps the most prominent area of recent development has been civil rights tort actions provided for by the Congress.

In *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir.1984), in developing the federal common law in relation to suits under § 1983, the Seventh Circuit recognized as an element of damages recoverable in such cases an award for loss of society and companionship and rejected the state bar with respect to the amount recoverable. The court expressly ruled that in implementing a federal policy underlying a federal statute, federal courts should not allow an applicable state statute inconsistent with federal policy and purpose to control. *Bell*, 746 F.2d at 1251. The court held that § 1983 was designed to allow full recovery

for the unconstitutional deprivation of life by a state official. *Bell*, 746 F.2d at 1251.

▮▮▮▮ The Warsaw Convention, a federal statute, has as its underlying purpose awarding full recovery in cases where there has been a finding of "wilful misconduct," as in the instant case. *Lockerbie*, 928 F.2d at 1285–86. Where a treaty conflicts with a prior statute, the treaty supersedes the statute. *See MacNamara v. Korean Air Lines*, 863 F.2d 1135, 1146 (3rd Cir.1988), *cert. den.* 493 U.S. 944, 110 S.Ct. 349, 107 L.Ed.2d 337 (1989). When the Senate ratified the Warsaw Convention in 1934, DOHSA was already on the statute books. If the recovery allowed by DOHSA, a prior federal statute, should conflict with the Convention in its purposes, then, of course, the Convention, which is a treaty, should prevail. *See MacNamara*, 863 F.2d at 1146. It is certainly not clear that the Senate intended to limit the recovery of airline passengers' survivors because of the existence of DOHSA and its limitations to pecuniary losses.

Disallowing recovery for loss of love, affection and companionship and other nonpecuniary losses would mean that in those cases where the survivors were not dependent on the decedent for financial support, an action under the Convention would net "little more than the cost of a casket." *Heath v. City of Hialeah*, 560 F.Supp. 840, 842 (S.D.Fla.1983).

This court concludes that the loss of love, affection and companionship of a decedent by a close relative is compensable under the Warsaw Convention. Therefore, plaintiffs may recover for the losses they suffered "due to the death of a member of the family." *In re Korean Air Lines*, 932 F.2d at 1487.

### LOSS OF INHERITANCE

▮▮▮▮ While plaintiffs did not specifically seek damages for loss of inheritance, Rule 54(c) of the Federal Rules of Civil Procedure authorizes the court to award appropriate damages even though they are not formerly pleaded.[10] Lost inheritance is re-

---

**10.** Rule 54(c) states:
Except as to a party against whom a judgment is entered by default, every final judgment

shall grant the relief to which the party in whose favor it is rendered is entitled, even if

coverable in most jurisdictions,[11] and federal common law permits recovery for lost inheritance.[12] One early commentator wrote:

> Where the evidence shows that it is probable that the decedent, but for [decedent's] death would have accumulated property, which if he had died intestate, would have been inherited by the beneficiaries of the action, these facts constitute such a reasonable expectation of pecuniary benefit as to authorize a recovery of damages for its loss.

TIFFANY, DEATH BY WRONGFUL ACT 378 (2d ed. 1913) (*reprinted in* SPEISER at 278). Plaintiffs may recover for lost inheritance. Defendant agrees. (Memorandum of Points and Authorities in Support of Defendant Korean Air Lines Co., LTD's Motion to Strike Plaintiffs' Jury Demand, To Determine The Law Applicable to the Determination of Damages and to Dismiss Muriel Mahalek as a Party Plaintiff at 39) ("Defendant's Brief").

 Lost inheritance is based on the probability of wealth accumulation by the decedent and the probability that the decedent would have left it to the plaintiffs. Future lost earnings and wages are also provable for the determination of lost inheritance.

## LOSS OF SERVICES

 Plaintiffs seek damages for loss of services. Defendant does not contest this recovery. (Defendant's Brief at 39–40) Loss of services is a compensable pecuniary loss and damages may be awarded where the value of services lost is measurable. *Gaudet,* 414 U.S. at 584, 94 S.Ct. at 814 *rev'd on other grounds,* 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (recovery for loss of services recognized at common law). At the time of Muriel Kole's death, Marjorie Zicherman was pregnant and had

planned to rely on her sister's services in raising and caring for her child. Plaintiffs may recover for measurable loss of services.

## TESTIMONY OF MICHAEL KOLE

 Plaintiffs moved to exclude the testimony of Michael Kole. Michael Kole· is the decedent's husband. His motion to intervene in this action as a party plaintiff was denied by this court by memorandum opinion dated June 25, 1992 because his intervention would be prejudicial to plaintiffs. Mr. Kole appealed the denial of the motion to intervene; however, the Second Circuit dismissed the appeal on September 29, 1992.

Just as Mr. Kole's intervention would unduly prejudice plaintiffs, his testimony as a witness for defendant would likewise be unduly prejudicial. Mr. Kole has brought an action arising out of the air disaster in this case in his own behalf in a federal district court in California. Therefore, plaintiffs' motion to exclude the testimony of Michael Kole is granted under Rule 403 of the Federal Rules of Evidence.

## CONCLUSION

All of the foregoing claimed losses must be proved at trial. The references to DOHSA do not foreclose plaintiffs' rights under the Warsaw Convention, and plaintiffs retain their right to a jury trial. Decedent's mother, Muriel Mahalek, may proceed as a party plaintiff. Plaintiffs cannot recover for decedent's loss of the quality or enjoyment of life. Plaintiffs may recover for decedent's conscious pain and suffering, for loss of support, mental injury and grief as defined by this decision, loss of love, affection and companionship, loss of inheritance, and lost services. The testimony of

---

the party has not demanded such relief in the party's pleadings. F.R.C.P. § 54(c).

**11.** S. SPEISER, at 277.

**12.** C. McCORMICK, DAMAGES 350 (1935). A survey of American jurisdictions reveals:

> Although there are decisions to the contrary, there is substantial authority in support of the

proposition that a beneficiary's loss of an expected inheritance, or of prospective accumulations, caused by a decedent's wrongful death, is recoverable as an element of damages under a wrongful death statute, and this rule is equally applicable to federal and state wrongful death statutes.

*Wrongful death damages for loss of expectancy of inheritance from decedent,* 91 ALR2d 477, 478.

decedent's husband, Michael Kole, is excluded.